ELIZABETH FELLERS, APPELLANT, V. LLEWELLYN FELLERS ET AL., APPELLEES.

FILED APRIL 21, 1898. No. 8049.

1. Antenuptial Contracts: RELEASE OF DOWER. The manner in which dower may be barred by an antenuptial arrangement between the parties concerned is regulated by statute, and in the absence of any contravening equitable considerations the method prescribed by statute is exclusive.

2. ———: ———: WILLS. An alleged antenuptial contract whereby each party agreed to claim no interest in the property of the other after marriage, and by which the proposed husband was required after the making of the antenuptial contract to make his will in such terms that his intended wife, thereunder, would be entitled to a certain estate in his real property, *held* to be an entirety; that the two above provisions were interdependent, and that, therefore, the alleged antenuptial agreement was but an executory contract, which, in view of the statute prescribing the method of barring dower in this state, is unenforceable.

APPEAL from the district court of Pawnee county. Heard below before BABCOCK, J.   *Reversed.*

*Lindsay & Raper* and *Francis Martin,* for appellant.

References: *Brandon v. Dawson,* 51 Mo. App. 237; *Noel v. Noel,* 1 Clarke [Ia.] 423; *Williamson v. Williamson,* 4 Clark [Ia.] 279; *Taylor v. Riggs,* 1 Pet. [U. S.] 591; *Elwell v. Walker,* 52 Ia. 256; *Fries v. Griffin,* 17 So. Rep. [Fla.] 66; *Bragg v. Geddes,* 93 Ill. 60; *Dennis v. Barber,* 6 S. & R. [Pa.] 425.

*J. H. Broady* and *Story & Story,* contra.

References: *Hafer v. Hafer,* 33 Kan. 449; *McNutt v. McNutt,* 2 L. R. A. [Ind.] 372; *Johnson v. Hubbell,* 66 Am. Dec. [N. J.] 773; *Tant's Appeal,* 40 Am. Rep. [Pa.] 646; *Edwards v. Martin,* 39 Ill. App. 145; *Kesler's Estate,* 143 Pa. St. 386; *Johnson v. McCue,* 34 Pa. St. 180; *Smith v. Tuit,* 127 Pa. St. 341; *Carmichael v. Carmichael,* 72 Mich. 85; *Ragsdale v. Barnett,* 5 Chicago L. J. [Ind.] 442; *Mintier v. Mintier,* 28 O. St. 307; *Johnston v. Spicer,* 107 N. Y. 185.

RYAN, C.

This action was one for an assignment of the dower interest of Elizabeth Fellers in the estate of her husband who had died leaving a will whereby the share of the said widow in said estate had been limited to the use of the homestead during her lifetime and a life estate of one-seventh of the residue.   At the trial in the district

court of Pawnee county there was a finding adverse to
the widow, whereupon her action was dismissed by the
court at her costs.

The judgment of the district court was based upon an
alleged antenuptial contract in writing entered into by
Andrew Fellers and Mrs. Elizabeth Wheaton about
January 27, 1890. This contract was not produced and
its existence was denied most emphatically by Mrs. Fel-
lers. There were only two witnesses who testified to
ever having seen a contract of the nature indicated.
One of these was Frank Goudy, who testified that on a
typewriter he wrote the terms of the contract in accord-
ance with the directions of his father, J. K. Goudy.
Frank described these terms as being in effect that
neither party to it, after they were married, would claim
any interest in the property of the other, but he did not
see it signed or have any knowledge that it ever was exe-
cuted. J. K. Goudy was an attorney at law at Pawnee
City in January, 1890. His description of the making
of the antenuptial contract was as follows: "They [An-
drew Fellers and Elizabeth Wheaton] afterward came
in together and made an agreement in regard to these
matters, which agreement was reduced to writing by my-
self and was read over by each of them or read to both
of them by me and was duly executed by them.    *    *    *
As I have already said, the contract was signed by those
parties and was acknowledged by them both and was de-
livered on the same day—the 27th day of January, 1890.
*    *    *    Each of these persons had children by former
marriage. Each of them also claimed to own property
in their own right. Their desire was for each, after the
marriage, to hold and keep the same and control the right
of disposition of their respective properties as they would
have done if they remained sole. So it was agreed, and
so the contract provided, that each of them should have
and retain the right to dispose of the property belonging
to them as if they were sole and unmarried; that Andrew
Fellers' was to acquire no interest in Mrs. Wheaton's

property, and Mrs. Wheaton, after marriage, was to acquire no right or interest in Mr. Feller's property; that a will should be executed by Mr. Fellers containing certain provisions which are set up in the will itself." With reference to the making of this will Mr. Goudy testified: "I cannot state anything about the date of the will any further than I have testified as shown by the entry of the cash received for drawing it, which is the 31st of July, 1890. The will may have been drawn prior to this and simply the payment of it entered here at the time it was executed and delivered." The defendants offered the will in evidence, and as it bore date July 31, 1890, that must be accepted as the date of its execution. From this testimony there can be but one conclusion, and that is that the so-called antenuptial agreement testified to by Mr. Goudy was at most but an executory contract on the part of Mr. Fellers, to become complete when Mr. Fellers should execute a will containing certain conditions, and that in fact this will was made July 31, 1890. But in this connection it is a very important circumstance that intermediate between January 27, 1890, and July 31, 1890, to-wit, on February 5, 1890, Andrew Fellers and Elizabeth Wheaton were married. He died on December 5, 1892. In view of the holding of this court with reference to the disability of a married woman, interesting questions might arise as to the power of Mrs. Fellers to consummate any agreement with her husband after their marriage, but we are relieved from any considerations of this class by others which cannot be passed over.

The portion of chapter 23, Compiled Statutes, which pertains to the subject under consideration is embraced within the following sections thereof, to-wit:

"Sec. 12. A married woman residing within this state may bar her right of dower in any estate conveyed by her husband, or by his guardian if he be a minor, by joining in a deed of conveyance, and acknowledging the same as prescribed by law, or by joining with her husband in a subsequent deed acknowledged in like manner.

"Sec. 13. A woman may also be barred of her dower in all the lands of her husband by jointure settled on her, with her assent, before the marriage, provided such jointure consists of a freehold estate in lands for the life of the wife at least, to take effect, in possession or profit, immediately on the death of the husband.

"Sec. 14. Such assent shall be expressed, if the woman be of full age, by her becoming a party to the conveyance by which it is settled, and if she be under age, by her joining with her father or guardian in such conveyance.

"Sec. 15. Any pecuniary provision that shall be made for the benefit of an intended wife, and in lieu of dower, shall, if assented to as provided in the preceding section, bar her right of dower in all the lands of her husband.

"Sec. 16. If any such jointure or pecuniary provision be made before marriage, and without the assent of the intended wife, or if it be made after marriage, she shall make her election before the death of her husband, whether she will take such jointure or pecuniary provision, or be endowed of the lands of her husband; but she shall not be entitled to both.

"Sec. 17. If any lands be devised to a woman, or other provisions be made for her in the will of her husband, she shall make her election whether she will take the lands so devised or the provision so made, or whether she will be endowed of the lands of her husband; but she shall not be entitled to both, unless it plainly appears by the will to have been so intended by the testator.

"Sec. 18. When a widow shall be entitled to an election under either of the two preceding sections, she shall be deemed to have elected to take such jointure, devise, or other provision, unless within one year after the death of her husband she shall commence proceedings for the assignment or recovery of her dower."

The word "jointure," as it is employed in the above quotation, signifies "An estate or property settled on a woman in consideration of marriage and to be enjoyed

by her after her husband's decease." (Century Dictionary, title, "Jointure.") To same effect is the definition of this word in Anderson's Dictionary of Law, Black's Law Dictionary, and Rapalje & Lawrence's Law Dictionary, as such word is used in the sections above quoted. As we are dealing with nothing but real estate in this case it is unnecessary to comprehend in this discussion the statutory provisions quoted with reference to pecuniary provisions in lieu of dower. The testimony of Mr. Goudy was that there was an antenuptial agreement that neither contracting party, after marriage, should have any interest in the property of the other and that Mr. Fellers thereafter should make a will containing certain provisions, which provisions were afterwards incorporated in his will. With reference to barring the dower right of a woman before marriage the statutory provisions quoted require this to be effected by a jointure settled on her, with her assent, before the marriage. As the contract drawn by Mr. Goudy was an entirety, the provision that neither party was to claim any interest in the property of the other cannot be segregated and enforced as an independent covenant by both. The object of this arrangement was to settle the rights of the parties and this confessedly did not admit of treating the contract as containing provisions independent of each other. The provision that each party should claim no interest in the property of the other must therefore depend upon the validity of the contract as a whole. It is very clear that an agreement to provide for a wife by a will which in fact was not made until after the marriage had been consummated falls very far short of the above statutory requirement. The assent of this proposed wife was required to be expressed to the terms expressed in the antenuptial contract by becoming a party to the conveyance by which the jointure was settled. As the testimony of Mr. Goudy was that there was not a present settlement of a jointure, but an agreement that the will of Mr. Fellers in future should be made contain-

ing certain provisions for the benefit of his intended wife, it was clearly impossible that she could become a party to the conveyance, even though the will should be deemed to be a conveyance. The antenuptial agreement testified to by Mr. Goudy as having been entered into January 27, 1890, was not effective to bar the dower right of Mrs. Fellers, which came into existence by virtue of a marriage subsequently consummated. If the will is relied upon as being a consummation of the antenuptial contract, its inadequacy as a bar to the dower right of appellant is obvious, for the statute prescribes that the dower right of a married woman shall be barred by a deed of conveyance in which she shall join with her husband.

We have not considered the testimony of witnesses other than J. K. Goudy and his son Frank, for the reason that, in our view, the statute which defines the right of dower of a married woman also provides how that dower may be barred. The testimony by which it was sought to be shown how Mrs. Fellers understood the terms of the antenuptial contract, and the absence of her dower right measured thereby, was immaterial. The wisdom of the statutory provisions which guard against the consideration of evidence of this unsatisfactory and usually conflicting character is illustrated by the history of this case. If Mr. Fellers, before his marriage, desired to agree with his proposed wife as to her relinquishment of her right of dower in his property, the statute defined very clearly how that purpose might be accomplished. The same considerations of public policy which justified the enactment of the statute of frauds justified the provisions of our statute prescribing the manner in which dower must be barred.

Appellees, in argument, attempted to bring this case within the operation of equitable considerations, but in this, we think, they were quite unsuccessful. There was nothing in the evidence to show that the wife, by virtue of the original antenuptial contract, received any property whatever. By the terms of the will of her husband

she was entitled to possession of the homestead, but to no other property of his, until the payment of his debts had been made in full, and then her share was a life estate in one-seventh of the residue. The statute gave her the right to occupy the dwelling-house of her husband so long as she remained his widow (Compiled Statutes, ch. 23, sec. 22), and the recognition of this right in the will did not equitably estop her to claim other rights conferred on her by statute. In any event, such rights as she acquired under and by virtue of the will after it had been probated could not be deemed to be under a contract then made with her husband. There was, therefore, no ground upon which could be raised an equitable estoppel against her. The circumstances called for the application of no equitable or other rules than those prescribed by the statute above quoted. The judgment of the district court is reversed and this cause is remanded for further proceedings not inconsistent with the views above expressed. ·

REVERSED AND REMANDED.