AMELIA RIEGER, APPELLEE, V. CARRIE SCHAIBLE ET AL., APPELLANTS.*

FILED MARCH 5, 1908. No. 15,049.

1. Executors and Administrators: ALLOWANCE TO WIDOW: APPEAL. An appeal lies from the judgment of the probate court granting or refusing an allowance to the widow out of the estate of her deceased husband.

2. Dower: BAR. Antenuptial contracts were void at common law, and did not constitute a bar to dower.

3. ———: ———. The provisions of the statute that a jointure is a bar of dower do not ordinarily deprive the intended wife of the power to bar her dower by any other form of antenuptial contract.

4. ———: ———. The first paragraph of the syllabus in *Fellers v. Fellers*, 54 Neb. 694, disapproved.

5. ———: ———. An antenuptial contract, in consideration of marriage and the release by each party of all interest in the property of the other, is based upon a sufficient consideration as to both parties, when each is the owner of property in which the other

* Rehearing denied. See opinion, p. 58, *post.*

would acquire an interest by reason of the marriage but for the antenuptial agreement, and is sufficient, when equitable and fair in its terms and entered into in good faith, to constitute an equitable bar to dower.

6. Antenuptial contracts between persons contemplating matrimony, determining the prospective rights of each in the property of both parties during and after marriage, are not against public policy and are enforceable.

7. **Executors and Administrators:** ANTENUPTIAL CONTRACTS: BAR TO WIDOW'S ALLOWANCE. An antenuptial contract made in good faith between parties, each of whom owned real and personal property not disproportionate in value, providing that in consideration of marriage each party thereto waived and released and forever quitclaimed and renounced all dower and other interest in and to the real estate and personal property which the other party had or should thereafter acquire; the expressed intention being that all the property of each should descend to his or her lawful heirs, released and divested of all claims of dower, curtesy, or other interest that the other contracting party might have as husband or wife, widower or widow, under the laws of the state of Nebraska, *held* sufficient to bar the widow's statutory allowance; the rights of children not being involved.

8. **Husband and Wife:** ANTENUPTIAL CONTRACT. Whether such antenuptial contract bars the widow's life estate in the homestead of her deceased husband is not here determined. If ineffectual for that purpose, the contract would not thereby be rendered void *in toto.*

APPEAL from the district court for Richardson county: WILLIAM H. KELLIGAR, JUDGE. *Reversed.*

*Reavis & Reavis,* for appellants.

*Clarence Gillespie* and *Edwin Falloon, contra.*

EPPERSON, C.

This appeal involves the validity of an antenuptial contract entered into December 11, 1897, by and between Henry Rieger, a widower, and Mrs. Amelia Lawler, a widow. The agreement was acknowledged, and its material portions follow:

"Whereas Henry Rieger and Amelia Lawler are about to enter into a contract of marriage, and whereas said

Henry Rieger is the owner of certain real estate and personal property, at this date, and Amelia Lawler is also the owner of certain real estate and personal property, at this date, and whereas said Henry Rieger and Amelia Lawler may at any time be desirous of disposing of said real estate and other property, divested of the curtesy, dower, or other claims of said Henry Rieger and Amelia Lawler either by deed or will:  Now, therefore, in consideration of said Henry Rieger and said Amelia Lawler consummating and completing said contract of marriage, said Henry Rieger and Amelia Lawler hereby agree to waive and release, and do waive and release and forever quitclaim and renounce all dower and other interest in and to said real estate and personal property that said Henry Rieger and Amelia Lawler may now have or hereafter acquire by any means whatsoever.  The intention being hereby to leave the absolute disposal of said real estate and other property now owned or hereafter acquired by either of them, unless taken in their joint names, so that at the death of said Henry Rieger and Amelia Lawler all of the property of said Henry Rieger and Amelia Lawler, real, personal, and mixed, shall descend to his and her lawful heirs released and divested of all claims of dower curtesy or other interest that said Henry Rieger and Amelia Lawler might have as widow or widower under the laws of the state of Nebraska.  And in consideration of the consummation of said marriage said Henry Rieger and Amelia Lawler hereby releases, cancels, and waives all claims to all property of said Henry Rieger and Amelia Lawler to which they might be entitled as wife or widow, husband or widower.  Any money transactions between the said parties may be represented by notes which, if not sooner paid, shall be a lien on their respective properties after death, and nothing in the above shall be construed to affect the right of either party to make a will disposing of their various properties contrary to this agreement, if either of them should so desire."

Each party was the owner of real and personal prop-

erty when the above contract was made, and each then had children living, the issue of a former marriage. The parties were married three months after the execution of the agreement, and lived together as husband and wife until the death of Henry Rieger on February 7, 1905. No children were born of their marriage. Henry Rieger left personal property worth $17,560.13, and six lots in Falls City, Nebraska, valued at $3,500, two of which were occupied by deceased and his wife as a homestead. During the settlement of his estate in the probate court his widow made application, in pursuance of the statute, for an allowance for her support and maintenance. The heirs objected on the ground that the antenuptial contract was a bar to the allowance claimed by Mrs. Rieger. The probate court adjudged the agreement void, and ordered payment of the allowance as prayed. The district court, on appeal, affirmed the order of the probate court, and the heirs bring the case here for review.

The widow (appellee) contends that the order allowing support from her husband's estate is not appealable, citing *Estate of James v. O'Neill*, 70 Neb. 132. This case does not support appellee's contention that an order allowing a widow an allowance is not subject to review. It was there held that an appeal would not lie from the district court to the supreme court in such matters; the proper remedy being a writ of error, which was not issued in that case. The *O'Neill* case did not declare the law to be that an order allowing the widow support from her husband's estate was not subject to review in any manner. We have not heretofore determined the question whether an order granting a widow an allowance is subject to review in the appellate courts. We are not now dealing with a mere temporary or interlocutory order. The court below granted the application of the widow, set aside the antenuptial contract, and allowed the full sum prayed for in her petition. This much of the estate of the deceased was distributed. We think such an order is a final order, and is appealable by virtue of section 42, ch. 20, Comp. St.

1907, which provides: "In all matters of probate juris-
diction, appeals shall be allowed from any final order,
judgment, or decree of the county court to the district
court by any person against whom any such order, judg-
ment, or decree may be made or who may be affected
thereby." The general rule seems to be that an appeal lies
from the judgment of the probate court granting or refus-
ing an allowance to the widow out of the estate of her de-
ceased husband. 18 Cyc. 402, note 86; Dame, Probate and
Administration, sec. 425. See, also, *Forwood v. Forwood,*
86 Ky. 114, 5 S. W. 361.

Appellee contends that the agreement is void and not a
bar to dower, and, being void for this reason, is void *in
toto,* and does not affect the widow's right to support dur-
ing the settlement of the estate. If the agreement in judg-
ment here does not bar dower, it follows, as we view it,
that it does not intercept the widow's allowance, and we
shall therefore examine the question whether the agree-
ment is sufficient to bar dower of the appellee in the lands
of her deceased husband. At common law the right of
dower could not be waived or lost by an antenuptial
agreement. *Gibson v. Gibson,* 15 Mass. *106, 8 Am. Dec.
94; *Hastings v. Dickinson,* 7 Mass. *153, 5 Am. Dec. 34;
*Blackmon v. Blackmon,* 16 Ala. 633; *Gould v. Womack,* 2
Ala. 83; *Logan v. Phillips,* 18 Mo. 22. Two reasons were
assigned by the courts to support the common law rule:
(1) The settlement being executed before marriage, the
demand of dower had no existence, and no right can be
barred before it accrues. (2) No right or title to a free-
hold estate can be barred by a collateral satisfaction. 14
Cyc. 939.

The antenuptial agreement being insufficient at com-
mon law to bar dower, the next inquiry is as to its validity
under the following provisions of our decedent statute
(Comp. St. 1897, ch. 23), in force at the time the agree-
ment herein was made:

"Section 12. A married woman residing within this
state may bar her right of dower in any estate conveyed

by her husband, or by his guardian if he be a minor, by joining in a deed of conveyance, and acknowledging the same as prescribed by law, or by joining with her husband in a subsequent deed acknowledged in like manner.

"Section 13. A woman may also be barred of her dower in all the lands of her husband by a jointure settled on her, with her assent, before the marriage, provided such jointure consists of a freehold estate in lands for the life of the wife at least, to take effect, in possession or profit, immediately on the death of the husband.

"Section 14. Such assent shall be expressed, if the woman be of full age, by her becoming a party to the conveyance by which it is settled, and if she be under age, by her joining with her father or guardian in such conveyance.

"Section 15. Any pecuniary provision that shall be made for the benefit of an intended wife, and in lieu of dower, shall, if assented to as provided in the preceding section, bar her right of dower in all the lands of her husband.

"Section 16. If any such jointure or pecuniary provision be made before marriage, and without the assent of the intended wife, or if it be made after marriage, she shall make her election before the death of her husband, whether she will take such jointure or pecuniary provision, or be endowed of the lands of her husband; but she shall not be entitled to both.

"Section 17. If any lands be devised to a woman, or other provisions be made for her in the will of her husband, she shall make her election whether she will take the lands so devised or the provision so made, or whether she will be endowed of the lands of her husband; but she shall not be entitled to both, unless it plainly appears by the will to have been so intended by the testator.

"Section 18. When a widow shall be entitled to an election under either of the two preceding sections, she shall be deemed to have elected to take such jointure, devise, or other provision, unless within one year after

the death of her husband she shall commence proceedings for the assignment or recovery of her dower."

The agreement before us does not fall within the provisions of our statute. No jointure was settled upon the wife. She received no freehold estate in the lands of her intended husband by virtue of the antenuptial contract. The agreement was not intended to operate as a legal jointure, and, under the statute, she was not barred of her dower. If the statutory method of barring dower is exclusive, the antenuptial contract herein is void. *Fellers v. Fellers*, 54 Neb. 694. We are of opinion, however, that the true rule is that such agreements are regulated by statute, and are void unless executed in accordance with the written law, except in equity, or, as stated by this court in *Fellers v. Fellers*, "in the absence of any contravening equitable considerations." We think the law is that a provision in a statute that jointure is a bar to dower does not ordinarily deprive an intended wife of the power to bar her dower by any other form of antenuptial contract. *Barth v. Lines*, 118 Ill. 374, 59 Am. Rep. 374; *McGee v. McGee*, 91 Ill. 548; *Naill v. Maurer*, 25 Md. 532; *Logan v. Phillips*, 18 Mo. 22; *Gelzer v. Gelzer*, Bailey, Eq. (S. Car.) 387, 23 Am. Dec. 180; *Desnoyer v. Jordan*, 27 Minn. 295; *Stilley v. Folger*, 14 Ohio, 610; 14 Cyc. 940, note 20.

The supreme court of Illinois in *Barth v. Lines, supra*, held: "An antenuptial agreement entered into by parties of mature years, with a full understanding of its meaning, whereby each party released and waived his or her right of dower in the lands and estate of the other, and it was provided that each should retain his or her separate property, then had or afterwards acquired, free from any and all claims of the other growing out of the marriage relation: *Held*, That such agreement operated as a bar to the claim of dower by the wife in the husband's lands, resting upon the consideration of his release of his legal rights in her separate estate." Magruder, J., further said in the opinion in that case: "The provision of

our statute, that, when a conveyance is made to, or in trust for, an intended wife, for the purpose of creating a jointure in her favor with her assent, to be taken in lieu of dower, such jointure shall bar any claim for dower by her in the lands of her husband (Hurd, Rev. St. 1885, ch. 41, sec. 7) 'cannot be said to deprive her of the power to bar her right to dower by any other form of antenuptial contract. * * * This, however, is not the case of a settlement or jointure, but of a contract.'" In *Naill v. Maurer, supra,* it appears that a husband and wife agreed before marriage that neither would claim during their marriage or after the death of the other any interest whatever in the property or estate of the other. After the death of the husband the wife claimed dower, and the court held "that the legal operation of the contract is not affected by art. 93, sec. 289 of the code, that a simple statutory declaration, that a settlement of property by jointure or otherwise, on a woman by her husband, before marriage, shall bar her of dower in his lands. That this is not a case of a settlement or jointure, but of a contract between competent parties, executed in good faith, and upon a good consideration, by which the wife has expressly relinquished all right to claim any estate or interest in the property of her deceased husband." The court in the opinion in the case last cited said with reference to the jointure statute of that state: "That is a simple statutory declaration, that a settlement of property by jointure or otherwise, on a woman by her husband, before marriage, shall bar her of dower in his lands, but it goes no further, and cannot be said to deprive her of the power to bar her right to dower by any other form of antenuptial contract. It amounts to nothing more than a declaration of the effect of the settlement in that class of cases." The court in *McGee v. McGee, supra,* uses this language: "It is conceded the provision made in the antenuptial agreement does not create a jointure in favor of the wife, within the meaning of our statute on that subject. That provides that, when an

estate in lands shall be conveyed to an intended husband
or wife, for the purpose of creating a jointure in favor
of either of them, with his or her assent, to be taken in
lieu of dower, such jointure shall bar any right or claim
of dower by the party jointured in the lands of the other.
None of the elements of a statutory jointure are to be
found in the provision made for the intended wife by
the antenuptial agreement; but may not that provision be
in the nature of a jointure, and may it not for that
reason bar the dower of the demandant?   Although the
cases on this subject are not entirely harmonious, the
weight of authority seems to be that any reasonable pro-
vision which an adult person agrees to accept in lieu of
dower will amount to an equitable jointure, and although
it may be wanting in the requisites of a legal jointure,
in equity it will bar dower." The court held in *Stilley
v. Folger,* 14 Ohio, 610: "A reasonable antenuptial agree-
ment will bar the wife of dower, though its terms be not
such as to constitute a good legal jointure." We take
the following excerpt from *Desnoyer v. Jordan, supra:*
"But it has always been permitted to the parties in con-
templation of marriage to fix those rights by agreement,
equitable and fairly made between them, and to exclude
the operation of the law in respect to fixing such rights;
so that, so far as the agreement extends, it, and not the
law, furnishes the measure of such rights.   That such
antenuptial agreements might be made was recognized
in the statute in force when this agreement was made.
Gen. St. 1866, ch. 69, secs. 1, 4; ch. 48, secs. 14-17.   The
latter of these statutes did not limit (as appellant argues)
antenuptial contracts to barring dower alone.   It only
prescribed what sort of provision for the wife, in any
such contract, should have the effect to bar dower; that it
must be a jointure of a freehold estate in lands for her life,
at least, to take effect in possession or profit immediately
on the death of the husband, or a pecuniary provision for
her benefit in lieu of dower, such jointure or pecuniary
provision to be assented to by her before the marriage.

But it did not disable the parties to make an antenuptial contract which should, in any other respect, fix the rights of the parties in the property of each other." In 2 Scribner, Dower (2d ed.), pp. 409, 413, it is said: "With respect to the legal requisite, that the estate limited in jointure be such an estate of freehold as should continue during the wife's life, no such circumstance will be necessary in equity in order to make the jointure an absolute bar to dower, if the intended wife be of age and a party to the deed, because, as she is able to settle and dispose of all of her rights, she is competent to extinguish her title to dower upon any terms to which she may think proper to agree. * * * The cases are not entirely agreed upon the question as to whether an antenuptial contract which merely secures to the wife her separate property, and makes no provision for her out of the husband's estate, is a good equitable jointure; but in a majority of the cases it is held, that if it be a part of such agreement that the wife shall relinquish her dower, it will be good in equity." We therefore conclude that the statutes of this state, which are similar to those construed by the courts in the cases above cited, do not provide the exclusive method of barring dower, or deprive parties competent to contract of the right to enter into any other form of antenuptial agreement. Antenuptial contracts attempting to intercept dower being void at common law, and the method prescribed by our statute creating jointures being exclusive only in the absence of equitable considerations, we must therefore look to the general equitable principles controlling such cases to determine the validity of the agreement in the case before us.

In states where statutes creating jointures exist, it is generally held that an antenuptial contract, entered into in good faith by competent parties, and which is fair and equitable in its terms, will be upheld and enforced by the courts. Independently of jointure statutes, the parties may prescribe a rule by antenuptial agreement changing

the one prescribed by law.   Such a contract "is not a
*release* of any right; but it is doing what is done every day
in other things, namely, providing a rule by agreement to
be applied instead of the rule which the law would furnish
in the absence of an agreement.   Where this rule by agree-
ment exists, dower, on common principles, ought to be held
not to attach."   1 Bishop, Law of Married Women, sec.
418.   "That, before the statute of uses, and, therefore, in-
dependently of the sections concerning jointure, if a hus-
band and his wife had entered into an antenuptial agree-
ment whereby she accepted any provision therein made
by him in lieu of dower, this undertaking bound her in
equity, and she could not have dower on his death.   The
same law prevailed after the statute was enacted; whence
may be traced, in part, the doctrine of what is called
equitable jointure, in distinction from jointure under the
statute of uses and the rulings thereon by the common
law tribunals."   1 Bishop, Law of Married Women, sec.
420.   "It is but a step from such a case as this to another
one of which there are several in the books, where the
parties agree beforehand that, after marriage, each shall
hold his or her antenuptial property to his or her separate
use, and, on the death of one of them, neither shall have
any marital claim on the estate of the other.   This is,
at least in a court of equity, generally esteemed to be a
good bar to dower."   1 Bishop, Law of Married Women,
sec. 423.   "The principle governing these cases, it should
be remembered, is, not that the antenuptial contract con-
stitutes a release of dower—for a thing not existing can-
not be released; but it is an undertaking not to claim
dower—an introduction of a rule by agreement differing
from the one which the law provides in the absence of an
agreement.   For the principle is well settled, that, though
parties marrying must take the *status* of marriage as the
law has established it, and cannot vary it by antenuptial
contract, yet, within certain legal limits, and proceeding
by legal rule, they may by such contract vary any or all
of those property-rights which the *status* superinduces."

1 Bishop, Law of Married Women, sec. 427. "While marriage is a sufficient consideration, yet any other valuable consideration may support an antenuptial settlement. The mutuality of the stipulations in the contract may constitute a sufficient consideration to each of the parties for the rights relinquished by the other, as, for instance, a mutual relinquishment by each of all rights in the property of the other." 21 Cyc. 1248. See, also, 19 Am. & Eng. Ency. Law (2d ed.), 1233; Schouler, Domestic Relations (5th ed.), secs. 171, 173; 2 Story, Equity Jurisprudence (13th ed.), secs. 1367, 1368, 1370.

Turning to the adjudged cases, we find that the supreme court of Illinois in *Kroell v. Kroell,* 76 N. E. 63 (219 Ill. 105), held: "An antenuptial contract is supported as to consideration by the subsequent marriage of the parties and mutual covenants waiving and releasing the rights of each in the property of the other. Antenuptial agreements between persons contemplating matrimony, determining the rights of each in the property of the other and in their own property during and after marriage, are not against public policy, but are enforceable." Each of the parties to the agreement in *Kroell v. Kroell, supra,* was the owner of real estate when the antenuptial contract was executed. The agreement contained mutual covenants waiving and releasing the rights of each party in the property of the other. The court in the opinion said: "It can make no difference whether the interest of the husband in the property or estate of his deceased wife is of the same kind and amount as the interest of the wife in the estate of her deceased husband. Whatever interest either one acquired in the property or estate of the other was released by the contract. It is further contended that the contract does not rest upon a sufficient consideration. and that an intended marriage is not such a consideration. The parties were married, and marriage itself has always been regarded as a sufficient consideration to support a marriage settlement. * * * It was the only consideration in the antenuptial contract passed upon in the case

of *Dunlop v. Lamb*, 182 Ill. 319. But in this case there was another consideration, which was the mutual covenants of the parties to waive their rights in the property of each other and the release of such rights. Each party conveyed and quitclaimed to the other all interest to be acquired, by virtue of the marriage, in the property, real and personal, of the other, and the mutual covenants were a good consideration." See *Yarde v. Yarde*, 187 Ill. 636; *Worrell v. Forsyth*, 141 Ill. 22; *Spencer v. Boardman*, 118 Ill. 553; *Weaver v. Weaver*, 109 Ill. 225; *McMahill v. McMahill*, 105 Ill. 596, 44 Am. Rep. 819; *Jordan v. Clark*, 81 Ill. 465; *Phelps v. Phelps*, 72 Ill. 545.

The supreme court of Iowa in *Fisher v. Koontz*, 110 Ia. 498, held: "An antenuptial contract, providing that the wife shall acquire no interest in the husband's estate, is binding. Marriage is a sufficient consideration for an antenuptial contract whereby the wife relinquishes her marital rights in the husband's property"—citing in support of its conclusion *Peet v. Peet*, 81 Ia. 172; *Ditson v. Ditson*, 85 Ia. 276; *Jacobs v. Jacobs*, 42 Ia. 600. Antenuptial agreements are upheld in Kansas. In *Hafer v. Hafer*, 33 Kan. 449, it was decided: "The statutes of Kansas recognize the right of parties contemplating marriage to make settlements and contracts relating to and based upon the consideration of marriage, and an antenuptial contract providing a different rule than the one prescribed by law for settling their property rights, entered into by persons competent to contract, and which, considering the circumstances of the parties at the time of making the same, is reasonable and just in its provisions, should be upheld and enforced. * * * Marriage is a good and sufficient consideration to sustain an antenuptial contract." In the opinion in the Kansas case it was further said: "It was also held in the court below that the contract was without consideration. Clearly, this is not so. In addition to the reciprocal agreements therein, it has for its support the consideration of marriage, which is not only a valuable consideration, but has

been held to be 'the highest consideration known in law.'"
See, further, *Brown v. Weld*, 5 Kan. App. 341. In *For-
wood v. Forwood*, 5 S. W. 361 (86 Ky. 114), the rule is
stated thus: "In the absence of fraud, a woman who is
*sui juris* may, by antenuptial contract, relinquish her right
of dower and distributive share in her intended husband's
estate; and the marriage of the parties is a sufficient
consideration to sustain such contract." *Sanders v. Mil-
ler*, 79 Ky. 517, 42 Am. Rep. 237. The court in *McNutt
v. McNutt*, 2 L. R. A. 372, 116 Ind. 545 (a case quite
similar to the one before us), reviews the authorities and
states its conclusions as follows: "A contract in consider-
ation of marriage, where each party releases all interest
in the other's property, is upon a sufficient consideration
as to both parties, at least where each is possessed of
property before marriage. A valid antenuptial contract,
founded on the consideration of marriage alone, may be
executed by a woman who has an estate of her own." See,
further, *Buffington v. Buffington*, 151 Ind. 200; *Kennedy
v. Kennedy*, 150 Ind. 636; *State v. Osborn*, 143 Ind. 671;
*Shaffer v. Shaffer*, 90 Ind. 472; *Bunnel v. Withcrow*, 29
Ind. 123. It was held in *Naill v. Maurer*, 25 Md. 532,
"that the agreement or contract cannot be avoided for
want of consideration; that either the reciprocal stipula-
tions of the contract or the proposed marriage would con-
stitute a consideration, in every way sufficient to render
the contract valid and binding." The court further said
in *Naill v. Maurer, supra:* "The contract was made in
contemplation of marriage, and, as clearly appears, was
intended to bar or prevent the acquisition thereby of
any right by either in the property of the other, in order
that the marriage proposed might take place. The main
object in view was the consummation of the marriage,
and it was to that end that the contract was executed.
It seemed almost impossible to view the contract as
founded on any other consideration, although the recip-
rocal character of the stipulations might be held to con-
stitute one sufficient to make the contract binding and

effective.     But whether the marriage they proposed be
expressly mentioned as a consideration or not, we think
it must be regarded as such within the purview and
meaning of the contract; and we accordingly hold that
the contract cannot be avoided on that ground." In
*McGee v. McGee*, 91 Ill. 548, Scott, J., said: "The con-
tract, in our judgment, is a reasonable one. It is one
that persons advanced in life could, with great propriety,
make, and especially where the parties have previously
been married, and where there may be children by both
marriages, among whom controversies as to property may
arise after the death of the parents. Such agreements
are forbidden by no considerations of public policy, and
there can be no reason why equity will not lend its aid
to compel the surviving party to abide the contract. Our
opinion is, the fair construction of the antenuptial agree-
ment is that it intercepts dower of the widow, and may
be set up as an effectual bar to her demand for dower in
the lands of which her husband died seized." In *Stilley
v. Folger*, 14 Ohio, 610, 649, it was said by the court:
"*Antenuptial contracts* have long been regarded as within
the policy of the law, both at Westminster and in the
United States. They are in favor of marriage and tend
to promote domestic happiness, by removing one of the
frequent causes of family disputes, contentions about
property and especially allowances to the wife. Indeed,
we think it may be considered as well settled, at this day,
that almost any *bona fide* and reasonable agreement,
made before marriage, to secure the wife in the enjoyment
either of her own separate property, or a portion of that
of her husband, whether during the coverture or after
his death, will be carried into execution in a court of
chancery." In *Mintier v. Mintier*, 28 Ohio St. 307, is the
following: "If the antenuptial agreement in this case was
intended by the parties to operate as an equitable jointure,
and as such to bar all claims of the wife to dower in
the real estate of the husband; if the parties were of
mature age, and capable of judging in respect to their

interests; if the agreement was fairly entered into in good faith, and without any fraud or imposition; if it was reasonable in its terms, and was in good faith acted upon and carried into effect by Robert Mintier during his life, no good reason is perceived why full effect should not be given to it, according to the intention of the parties." In *Jacobs v. Jacobs,* 42 Ia. 600, it was said: "It is claimed, however, that the contract is unreasonable and without sufficient consideration, and therefore ought not in a court of equity to be enforced. We cannot so regard it. The law looks upon marriage as a civil contract, and this marriage seems to have been purely a business transaction. So far as appears, the contract was freely and voluntarily entered into, without any fraud or imposition. One of the parties was a crippled widower, sixty-two years old, with eleven children, and real estate worth $12,000; the other, a widow with three children, forty acres of land and $700 or $800 in money. They were willing to marry, but each wanted the sole control of his or her own property, and to transmit it to his or her children. * * * We cannot say but that the advantages are about equal, and the contract is fair and reasonable. We know of no reason why it should not be enforced." In *Pierce v. Pierce,* 71 N. Y. 154, is the following: "Antenuptial contracts, whereby the future wife releases her claim to her right of dower, and to all other rights to the estate of her husband upon his decease, are fully recognized in law. When fairly made and executed without fraud and imposition, they will be enforced by the courts." In *Johnston v. Spicer,* 107 N. Y. 185, it was said: "Antenuptial contracts, by which it is attempted to regulate and control the interest which each of the parties to the marriage shall take in the property of the other, during coverture or after death, like dower, are favored by the courts and will be enforced in equity according to the intention of the parties whenever the contingency provided by the contract arises."

A leading case is *Andrews v. Andrews,* 8 Conn. *79,

where the rule is stated as follows: "I can see no reason why such an agreement, deliberately made, and upon a sufficient consideration, should not be enforced in chancery. Such contracts, especially in late marriages, are not unusual. They are opposed to no rule of law, nor to any principle of sound policy. On the contrary, they are, in my judgment, highly beneficial and are eminently entitled to the aid of a court of chancery, where such aid is necessary to carry them into effect; and especially is this true, where the contract has been executed, in good faith, by one of the parties." See, further, *Staub's Appeal*, 66 Conn. 127; *Selleck v. Selleck*, 8 Conn. *86, note; *Webb v. Webb*, 29 Ala. 588; *Farrow v. Farrow*, 1 Del. Ch. 457; *Brooks v. Austin*, 95 N. Car. 474; *Neves v. Scott*, 9 How. (U. S.) 196; *Marshall v. Morris*, 16 Ga. 368; *Culberson v. Culberson*, 37 Ga. 296; *Wentworth v. Wentworth*, 69 Me. 247; *Busey v. McCurley*, 61 Md. 436; *Butman v. Porter*, 100 Mass. 337; *Freeland v. Freeland*, 128 Mass. 509; *Jenkins v. Holt*, 109 Mass. 261; *Miller v. Goodwin*, 8 Gray (Mass.), 542; *Vincent v. Spooner*, 2 Cush. (Mass.) 467; *Tarbell v. Tarbell*, 10 Allen (Mass.), 278; *Sullings v. Sullings*, 9 Allen (Mass.), 234; *Heald's Petition*, 22 N. H. 265; *Carpenter v. Carpenter*, 40 Hun (N. Y.), 263; *Shoch v. Shoch's Exr's*, 19 Pa. St. 252; *Ellmaker v. Ellmaker*, 4 Watts (Pa.), 89; *Law v. Smith*, 2 R. I. 244; *Cunningham v. Shannon*, 4 Rich. Eq. (S. Car.) 135; *Findley's Exr's v. Findley*, 11 Grat. (Va.) 434; *Charles v. Charles*, 8 Grat. (Va.) 486; *Faulkner v. Faulkner's Exr's*, 3 Leigh (Va.), 255; *Hinkle v. Hinkle*, 34 W. Va. 142; *West v. Walker*, 77 Wis. 557; *Hershy v. Latham*, 46 Ark. 542; *Peck v. Peck*, 12 R. I. 485, 34 Am. Rep. 702.

We think the rule deducible from the authorities under review is that in equity an antenuptial contract, in consideration of marriage and the release by each party of all interest in the property of the other, is based upon a sufficient consideration as to both parties, when each is the owner of an estate in which the other would acquire

an interest by reason of the marital relations but for the antenuptial agreement, and is sufficient, when equitable and fair in its terms and entered into in good faith, to constitute an equitable bar to dower. Such is the rule for which appellants contend.

We shall now examine the authorities which are claimed to be in conflict with the rule of the decisions above referred to. It is argued that *Fellers v. Fellers,* 54 Neb. 694, does not recognize the equitable rule relied upon by appellants; that this court is committed to the doctrine that the method prescribed by statute creating a jointure is exclusive; and that, the husband not having settled upon the wife any real estate, the agreement is void and unenforceable and does not bar dower. The decision in the *Fellers* case and the disposition made of the contract there construed was based solely upon the fact that the agreement was executory at the time of the marriage. As we view that case, no occasion existed for discussing the effect of contravening equitable considerations or for launching a rule with reference thereto; indeed, a rule to be deduced from the authorities, and the better reasoning, is that dower may be waived by a reasonable and *bona fide* antenuptial agreement, though not contemplated or provided for by the statute, and such contract will be enforced in the absence of contravening equitable considerations. It seems that the *Fellers* case was completely disposed of upon grounds not requiring a consideration of the statutory provisions relative to dower, and the discussion of "contravening equitable considerations" was *obiter dictum.* It is so considered, and the first paragraph of the syllabus is overruled. The antenuptial contract in the case before us does not depend upon a subsequent provision being made for the intended wife by will, and the covenant that either party was not to claim any interest in the property of the other may be enforced, if found to be within the equitable rule heretofore stated.

As we understand the cases of *In re Estate of Pulling,*

93 Mich. 274, and *Pulling v. Durfee,* 85 Mich. 34, the court did not declare the law in that state to be that jointure statutes similar to ours prescribed the exclusive method of barring dower, or that such provisions deprive an intended wife of the power to bar her dower in equity by any other form of antenuptial contract. In that case there were several written instruments besides the agreement relied upon, and in one of the written instruments the husband declared that he "intended to provide for her (his wife's) future consistently with his ability in a financial way." The heirs contended that the antenuptial contract was binding upon the widow and should be enforced, and the court said: "Were the agreements signed by the widow the sole evidence of what the understanding between the parties actually was, there might be some force in the contention." *In re Estate of Pulling,* 93 Mich. 274. The case of *Curry v. Curry,* 10 Hun (N. Y.), 366, has been repudiated by later decisions of the same court. *Young v. Hicks,* 27 Hun (N. Y.), 54; *Clark v. Clark,* 28 Hun (N. Y.), 509. In the last case cited it was said: "But we cannot concur in the observation of the learned judge in that case (*Curry v. Curry, supra*), that antenuptial contracts are against public policy. On the contrary, we think that the current of decisions respecting marriage settlements shows that, when such contracts are freely and fairly entered into, they are generally conducive to the welfare of the parties thereto and subserve the best purposes of the marriage relation."

The case of *Grogan v. Garrison,* 27 Ohio St. 50, as pointed out in *McNutt v. McNutt,* 116 Ind. 545, apparently confuses postnuptial and antenuptial contracts, and appears to be in conflict with a former decision (*Stilley v. Folger,* 14 Ohio, 610) and a later utterance of the same court (*Mintier v. Mintier,* 28 Ohio St. 307). It was held in *Mowser v. Mowser,* 87 Mo. 437: "A parol antenuptial agreement between husband and wife that, upon the death of either, the other should claim no interest in the estate of the deceased, is not admissible

against the widow in a suit by her for the allowance given her by Revised Statutes, section 107, where she has received nothing as a consideration for the alleged agreement." And further: "It is against public policy to allow a man by an agreement before marriage, which does not secure to the wife after his death a provision for her support during her life, to bar her right to dower." *Mowser v. Mowser, supra,* seems to be an authority against the rule for which appellants contend in the case at bar, and we consider the Missouri courts as committed to a different doctrine than the one announced in this opinion. See *Farris v. Coleman,* 103 Mo. 352, 15 S. W. 767; *Moran v. Stewart,* 173 Mo. 207, 73 S. W. 177; *King v. King,* 184 Mo. 99, 82 S. W. 101; *Coulter v. Lyda,* 102 Mo. App. 401, 76 S. W. 720, where *Mowser v. Mowser, supra,* is reaffirmed.

When we keep in view the distinction between antenuptial and postnuptial contracts, and that the law applicable to the latter, for obvious reasons, has no application to the former, we are of opinion that the authorities cited, except the Missouri cases above referred to, do not interfere with the operation of the rule in equity for which appellants contend, and we shall now proceed to apply that rule to the facts of the case under review.

Both parties were *sui juris,* and each was the owner of real and personal property when the antenuptial contract was executed, the amount and value of the property of each not being clearly disclosed by the evidence. The agreement was made in contemplation of marriage, and each released all claims of dower, curtsey, or other interest in the property of the other. We are therefore not dealing with a case where the intended wife had no property in which she could request or require the intended husband to release his rights arising by virtue of the marriage, and to which he would be entitled should he survive her, and the decision herein must be limited to such cases. An apt illustration was given in *McNutt v. McNutt, supra,* as follows: "Suppose the woman's free-

hold estate to be of great value, yielding an annual income of ten thousand dollars. Why should courts in such a case interfere and annul an antenuptial contract made and acted upon in good faith? Upon what imaginable ground of public policy could such an interference be justified? If she does own an estate in land, and if there is no fraud, and nothing unconscionable, she should be allowed to judge for herself whether the marriage is of itself a sufficient consideration, and courts should not, after the husband's death, substitute their judgment for hers. The truth is it is exceedingly difficult to imagine why, in any case where there is no fraud, courts should displace the judgment of contracting parties and substitute their own. No persons in the world can so well and so justly judge as the contracting parties themselves, and it is only in the strongest and clearest cases that courts should disregard their judgment, and never where there is neither positive wrong nor a fraud. The authorities sustain our conclusion." In view of the authorities cited and the reasons given, we think the antenuptial contract in the case at bar is sufficient in equity to bar dower. The provisions of the antenuptial agreement being sufficient to bar dower, as we have determined, it is quite difficult to see how it would not intercept the statutory right to an allowance; there being no children the issue of the marriage of the parties. As stated in *Staub's Appeal*, 66 Conn. 127: "If she can thus bind herself as to her principal rights, it is difficult to see why she may not also do so as to this minor and incidental right to an allowance." See, also, *Coulter v. Lyda, supra*.

The antenuptial agreement in the instant case does not, in express terms, waive the right to an allowance, but contains sweeping provisions whereby each party releases to the other all claims of dower, curtsey, "or other interest" in his or her estate. No particular form of words is required to create an antenuptial settlement, and a liberal construction of the instrument will be indulged in order to carry out the intention of the parties.

*Carswell v. Schley,* 56 Ga. 101; *Ardis v. Printup,* 39 Ga. 648; *Matney v. Linn,* 59 Kan. 613; *Mintier v. Mintier, supra; Tucker's Appeal,* 75 Pa. St. 354; *Gause v. Hale,* 37 N. Car. 241; *Buffington v. Buffington,* 151 Ind. 200; 21 Cyc. 1259. The rule seems to be that a widow may by appropriate and sweeping provisions of an antenuptial contract waive her right to an allowance, when the rights of minor children are not involved. 18 Cyc. 390; *Kroell v. Kroell,* 219 Ill. 105, 76 N. E. 63; *Pavlicek v. Roessler,* 222 Ill. 83. In *Kroell v. Kroell, supra,* it was held: "A contract executed by a husband and wife, whereby each releases and conveys to the other all interest in the other's property, and renounces all claims in law or equity of curtesy, dower, homestead, survivorship, or otherwise, constitutes a release by the wife of her right to a widow's award after the death of the husband, and bars the same, provided there are no minor children of the husband living with the widow." 76 N. E. 63. The contract there construed is similar to the one before us, and the court said in the opinion: "The right to a widow's award, under the statute, depends upon marriage, the continuance of the marriage relation until death, and the survivorship of the wife. The contract included all rights acquired by either one of the parties to it who should outlive the other in the property or estate of the other, and clearly embraced the widow's award. The contract is sweeping in its terms, and includes every interest that the petitioner acquired in or to the property of her husband by virtue of the marriage and every interest which she would become entitled to upon his death in case she survived him." 219 Ill. 105. In *Staub's Appeal, supra,* it was decided that a married woman who had entered into an antenuptial contract could bar herself of the statutory right to an allowance. And in *Appeal of Cowles,* 49 Atl. 195 (74 Conn. 24), it was held: "Under an antenuptial agreement providing that 'the parties hereto * * * release * * * all rights of dower, curtesy, or survivorship, as well as all other rights, either

vested or inchoate, * * * which may be created or established by virtue of such marriage by the common law or any statute,' etc., the surviving widow is not entitled to an allowance from her deceased husband's estate pending settlement." In *Perkins v. Brinkley,* 133 N. Car. 86, the wife by antenuptial contract agreed that she would not claim for herself any right, title, or interest in any property owned by the said party of the first part (her intended husband). It was held that the contract barred her as widow from any statutory allowance. There is a clear distinction between the case at bar and those cases where the rights of minors are involved. The parties to an antenuptial agreement cannot prejudice the rights of minor children, the issue of the intended marriage. See authorities reviewed in *Kroell v. Kroell, supra.* With few exceptions the decisions holding that the widow was not barred by her antenuptial contract are cases where children were born of the marriage, or the contract was executory, and the wife or widow was held to have the right to repudiate the agreement. *Weaver v. Weaver,* 109 Ill. 225; *Zachmann v. Zachmann,* 201 Ill. 380. We are of opinion that the antenuptial contract relied upon by appellants is a bar to the statutory allowance claimed by appellee, unless for considerations presently to be stated it must be held that the agreement is unenforceable in equity.

It is argued that, if the antenuptial contract is valid, still it should not be enforced in a court of equity, for the reason that the utmost good faith is required between parties to such contracts, and, if the provisions secured to the wife be unreasonable or disproportionate to the means of the intended husband, it raises the presumption of designed concealment, and throws on him the burden of disproof. *Kline's Estate,* 64 Pa. St. 122. In *Pierce v. Pierce,* 71 N. Y. 154, it was held: "While an antenuptial contract, by which the future wife releases all claims against the estate of her husband upon his decease, will be sustained when fairly made, yet, from the confidential

relations between the parties, it will be regarded with the most rigid scrutiny; and where the circumstances establish that the woman has been deceived, or induced by false pretenses to enter into the contract, it will be held null and void. *It seems* that the presumption is against the validity of such a contract, and the burden of proof is cast upon the husband, or his representatives, to show perfect good faith; and strict proof will be required, particularly where the provision made for the wife is inequitable and unreasonably disproportionate to the means, of the husband." The court said in the opinion: "The relationship of parties who are about to enter into the marriage state is one of mutual confidence, and far different from that of those who are dealing with each other at arm's length. This is especially the case on the part of the woman; and it is the duty of each to be frank and unreserved when about to enter into an antenuptial contract, by a full disclosure of all facts and circumstances which may in any way affect the agreement." The rule is stated in 21 Cyc. 1249, thus: An antenuptial agreement wherein the intended wife releases "all claims against the estate of the intended husband, although valid when fairly made, will be most rigidly scrutinized, and, if the circumstances show that she has been deceived, it will be set aside." *Murdock v. Murdock,* 219 Ill. 123; *Barker v. Barker,* 126 Ala. 503; *Graham v. Graham,* 143 N. Y. 573; *Fisher v. Koontz,* 110 Ia. 498.

Appellee in the case at bar introduced no evidence, and in what respect she was deceived or overreached is not pointed out by counsel. She lived on a farm in the same neighborhood with her intended husband. Negotiations leading up to the agreement seem to have been made by the parties themselves. The antenuptial contract was read over to her more than once, and its provisions fully explained to her. There is no suggestion of fraud or concealment in the evidence. The amount and value of her property at the time of the marriage is not disclosed, but that some of it was personal property does appear. Un-

doubtedly she thought the reservations of her property from the control of her intended husband, and the exclusion of his rights in the property she then owned, and her future accumulations should he survive her, were of more value to her and her children by former marriage than any interest she might leave in the property of her intended husband. At any rate, the interest she reserved in her own estate does not appear to be so disproportionate or unreasonable as to raise the presumption of designed concealment on the part of the husband. This marriage seems to have been in the nature of a business transaction. The parties were advanced in years. Each possessed a separate estate. They were willing to marry, but each, as disclosed by the agreement, desired the control of his or her own property, and wished to transmit it to his or her children by former marriage untrammeled by the interests the law might create in the survivor. The agreement, so far as appears by the record before us, was fairly made. Appellee was not deceived or overreached. The agreement was based upon a sufficient consideration, and was executed in good faith. Appellee understood its purport, and should be held to abide its terms. In this respect, however, and before passing from this branch of the case, it might be well to state that a court of equity, when called upon to consider an antenuptial contract, should examine and construe the instrument in the light of the circumstances surrounding that particular case, and enforce or annul the agreement according to the facts disclosed in the case before it. No arbitrary rule can be laid down which would apply to all antenuptial arrangements.

Appellee's final contention is that the antenuptial contract did not bar her right to homestead during her life, and for this reason the agreement was void *in toto*. It is unnecessary for us to determine in this action whether she is estopped by her agreement from claiming a life estate in the homestead, but, assuming that she is not, the question is whether the contract, being insufficient to

bar such claim, is void *in toto*. The contract does not specifically mention the homestead interest of the survivor. It does not contain any illegal considerations. Had no homestead existed at the death of the husband, the contract would certainly be valid, and reason dictates that the existence of a homestead should not require an avoidance of the contract in its operation upon the widow's right to dower and allowance.

The lower courts erred in decreeing that the antenuptial agreement in the case under review did not bar appellee's statutory allowance during the settlement of her husband's estate; and we recommend that the judgment of the district court be reversed and the cause remanded for further proceedings consistent herewith.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings consistent therewith.

REVERSED.

The following opinion on motion for rehearing was filed June 4, 1908. *Rehearing denied:*

DUFFIE, C.

The opinion of Mr. Commissioner EPPERSON is found *ante,* p. 33. In an interesting brief in support of the motion for a rehearing, the opinion of Mr. Commissioner EPPERSON is vigorously attacked. The most vital objection urged against the opinion, in our judgment, is the fact that it overrules the former holding of this court in *Fellers v. Fellers,* 54 Neb. 694, construing our statute relating to marriage settlements. We concede that an opinion establishing a rule of property should not be lightly set aside, but, when the opinion is not based upon reason, is contrary to public policy, and property rights will not be injuriously affected if overruled, the court

should not hesitate in refusing to follow it further. Because the legislature provided a way in which a woman might bar herself of dower in her husband's estate, by having property settled upon her prior to her marriage, Mr. Commissioner RYAN, in *Fellers v. Fellers, supra,* took the position that the only way in which she could effectuate the purpose was by following the method prescribed by the statute. His opinion entirely ignores the right of a woman of mature years to protect her own property or to exclude herself from dower in her husband's estate by contract entered into prior to her marriage. There is nothing in our statute from which it can be inferred that the right of contract was taken away from the parties, or that a contract made before marriage by which each of the parties should renounce all claim to the property of the other arising from the marriage relation might not be made and enforced by the court. As stated in the opinion of Mr. Commissioner EPPERSON, the prevailing opinion is now in favor of recognizing and enforcing such antenuptial contracts, when reasonable in their terms and made by parties with full knowledge of their conditions. Public policy would also seem to favor such contracts. As said in *Stilley v. Folger,* 14 Ohio, 610: "Antenuptial contracts have long been regarded as within the policy of the law both at Westminster and in the United States. They are in favor of marriage and tend to promote domestic happiness, by removing one of the frequent causes of family disputes, contentions about property, and especially allowances to the wife. Indeed, we think it may be considered as well settled, at this day, that almost any *bona fide* and reasonable agreement, made before marriage, to secure the wife in the enjoyment either of her own separate property or a portion of that of her husband, whether during the coverture or after his death, will be carried into execution in a court of chancery." On the main question involved we have no doubt that the motion should be overruled.

A question of minor importance involves the right of

a widow to an allowance during the settlement of the estate. It is urged with much force that this allowance is a provision made for the benefit of the widow and her family while the estate is in process of settlement, and that it is an absolute right of which she cannot be deprived. It is also urged that the order making the allowance is interlocutory, and not a final order from which an appeal will lie. If the contract, as we believe, is valid and enforceable, it should be given full effect, and the widow denied any interest in, or any part of, the husband's estate. By the terms of the contract she has no greater right to an allowance than she has to dower, and, if her dower interest may be barred by contract prior to marriage, on the same principle the allowance awarded the widow by statute would also be barred.

We are satisfied that the opinion establishes the better rule, that the enforcement of the rule will not affect any property rights, except in the future, and that it should be adhered to, and the motion overruled. We so recommend.

By the Court: For the reasons given in the foregoing opinion, the motion for a rehearing is

OVERRULED.