## J. P. WEIS v. PETER BACH, Appellant.

**Husband and wife:** ANTENUPTIAL CONTRACT: EXTINGUISHMENT OF
1 HOMESTEAD RIGHT. In the absence of fraud or unfair advantage an antenuptial contract, which is reasonable under the circumstances and conditions of the parties, involving a mutual relinquishment of all interest of the husband or wife in the property of the other is valid, and will operate to extinguish the homestead right of either in the property of the other.

**Same:** WHAT PROPERTY COVERED BY CONTRACT. Although an antenup-
2 tial contract applies only to that part of the property of one spouse owned at the time of marriage it will cover property in the possession of the spouse at the time of marriage, occupied as a homestead and constituting the only real estate claimed by such spouse, although the same had been previously and fraudulently conveyed to another, but subsequently in recognition of the unenforceable trust was after the marriage reconveyed.

**Conveyances:** CONSIDERATION: PAROL EVIDENCE. The rule that parol
3 evidence is inadmissible to contradict the recitals of a deed as to the consideration has no application where the question of consideration is raised by one who is a stranger to the deed.

*Appeal from Jackson District Court.*—HON. A. J. HOUSE,
Judge.

WEDNESDAY, MARCH 9, 1910.

ACTION to quiet title. There was a decree for plaintiff and defendant appeals.—*Affirmed.*

*Keck & Keck,* for appellant.

*Myatt & Heide* and *Willard H. Palmer,* for appellee.

McCLAIN, J.—The premises in controversy consist of a house and lot in the town of Andrew, in Jackson County; the house being so arranged that a portion of the lower story may be used for business purposes. Plaintiff claims fee-simple title under a conveyance from his mother, who had by remarriage become the wife of defendant. There is no question as to the record title being in plaintiff's mother at the time of the conveyance to plaintiff for a valuable consideration in 1905, but it is the claim of defendant that the premises constituted the homestead of his wife and himself, and that her deed to plaintiff was void on account of the failure of defendant to join therein. As against this contention, plaintiff relies upon an antenuptial contract entered into between defendant and plaintiff's mother in 1898, in which it was stipulated that: "The said Lena Weis may and shall during the continuance of said marriage and after separation by death or otherwise separately own, use, possess, convey and dispose of all property of every kind, both real and personal, belonging to her before said marriage and all the rents, issues and profits thereof to whomsoever she may choose, and in the same manner and to the same extent that she now can or then could have done, had such marriage not taken place and that at the death of said Lena Weis all property separately owned by her, both real and personal, shall pass and vest in her heirs and assigns in the same manner and to the same extent that it would, had such marriage not taken place." It is further stipulated that, if Lena Weis shall outlive said Peter

Bach, she shall receive from the estate of said Peter Bach the sum of $300, and that his property shall be owned by him and disposed of after his death as though no marriage had taken place. On the other hand, it is stipulated that Lena Weis "may and shall have perfect right to and she is hereby authorized and empowered by said Peter Bach to convey during the continuance of said marriage and after separation by death or otherwise, all property belonging to her both real and personal." There is a further covenant that, in case Lena Weis dies before Peter Bach, "then said Peter Bach to have use of her house for six months without rent." In avoidance of the alleged effect of this agreement as cutting off defendant's homestead right in the premises, it is claimed for defendant, first, that the homestead right which would accrue to him on the consummation of the marriage could not be cut off by such an agreement; and, second, that the premises in controversy were acquired by defendant's wife after the marriage, and therefore under the terms of the antenuptial contract defendant's rights therein are not affected. A further contention for plaintiff is that defendant had estopped himself by his conduct from claiming any right or interest in or to the premises, but this contention we shall not have occasion to consider.

I. No authorities are cited for defendant in support of the claim that homestead rights which would otherwise accrue to the prospective husband on the consummation of

1. HUSBAND AND WIFE: antenuptial contract: extinguishment of homestead right.
the marriage may not be cut off by antenuptial contract. In the absence of fraud or unfair dealing, antenuptial contracts which are reasonable under the circumstances and conditions of the parties are sustained. *In re Devoe's Estate,* 113 Iowa, 4; *Fisher v. Koontz,* 110 Iowa, 498; *Reiger v. Schaible,* 81 Neb. 33 (115 N. W. 560, 17 L. R. A. (N. S.) 866). There is nothing in the record in this case to impeach the fairness and equity of the agree-

ment on the part of defendant to forego all the rights which he would have otherwise acquired by marriage in the property of his wife in consideration of her like relinquishment of all interest in his own property, and we reach the conclusion that, under the contract, defendant never acquired a homestead interest in any property covered by the terms of the contract, and that any such property could be conveyed by defendant's wife after the marriage without the necessity of joinder therein by the defendant to relinquish his dower and homestead rights.

II.   It is unnecessary to discuss the question whether the antenuptial contract should be limited in its application to property owned by defendant's wife at the time of her marriage.   Such a limitation seems to be indicated by a portion of the contract as above quoted, but it is apparently negatived by the clause reserving to the wife the right to convey during the continuance of the marriage all property belonging to her both real and personal.   As a matter of fact, the premises in controversy were occupied by Lena Weis as a homestead from 1883 to a time subsequent to her marriage to defendant.   In the year 1883 she executed a conveyance thereof to her brother Michael Weis for a recited consideration of $660, but it appears that no substantial portion of this consideration was paid, that Lena Weis continued in possession of the property, and that, for the purpose of revesting title in Lena Weis, Michael and his wife made a warranty deed of the premises to her for the same recited consideration in 1902; no actual consideration being paid.   We think the evidence satisfactorily shows that the conveyance to Michael Weis was colorable only for the purpose of putting the apparent title out of Lena Weis in anticipation of difficulty which might arise on account of the use of a portion of the house as a saloon, and that all the parties regarded the real ownership as continuing in Lena Weis.   However fraudulent

*2. SAME: what property covered by contract.*

the conveyance to Michael Weis may have been, and however impossible it might be under our statute of frauds (which is a rule of evidence only) to establish a parol trust in Lena Weis as against Michael Weis, it is clear that, after Michael. Weis recognized the trust and executed it by a reconveyance, defendant is not in a situation to claim that his wife was not the real owner of the property at the time of the marriage. After the execution of such a trust, no one who has not acquired an interest in or claim upon the property which will be defeated by the execution of the trust can assert its invalidity. *Johnston v. Jickling,* 141 Iowa, 444.

The rule that parol evidence is not admissible to contradict the recitals of a deed as to consideration has no application where the question of consideration in fact is raised by one who is a stranger to the deed. *Logan v. Miller,* 106 . Iowa, '511; *Gardner v. Lightfoot,* 71 Iowa, 577; *Morris v. Landaur,* 48 Iowa, 234. We think the evidence is ample, therefore, to show that the premises in controversy belonged in fact to Lena Weis at the time of her marriage to defendant, and it is immaterial that we determine whether the antenuptial contract applied to property subsequently acquired by her.

3. CONVEYANCES: consideration: parol evidence.

As bearing upon the interpretation of this contract, we may say, however, that there is every reason to believe that both parties understood that it related specifically to the premises in controversy, and that the intention was to reserve to Lena Weis the right to convey these premises after marriage, regardless of any right which defendant would have otherwise acquired therein by the marriage. It appears that these premises constituted the only real property which Lena Weis had or claimed at the time the antenuptial contract was made. She was then occupying the premises as her homestead. A few years after the marriage, when the homestead seems to have been in

fact abandoned, defendant and his wife entered into a written agreement by which defendant undertook to pay his wife the sum of $2 per month as rent for a portion of these premises, and payments under this contract were made, not only to the wife, but to the plaintiff, after conveyance was made to him. In view of these circumstances, it can not reasonably be contended, we think, that the right of the defendant's wife after marriage to convey the premises free from the assertion of any claim or right on the part of the defendant was not effectually preserved by the antenuptial contract.

The decree of the trial court is *affirmed.*