Case 108—EQUITY—October 15, 1881.

# Sanders, &c., v. Miller, &c.

79 517
109 718

APPEAL FROM SHELBY CIRCUIT COURT.

1. A settlement made in good faith by the husband upon his wife, in the execution of an antenuptial contract, in writing, although void at law, will be sustained by the chancellor.

2. Marriage is a good consideration for such a contract and settlement, and if made in good faith, the settlement will not be disturbed at the instance of creditors.

L. A. WEAKLEY and W. LINDSAY for appellants.

1. Marriage is a good consideration for the antenuptial contract in this case, and the settlement by the husband upon the wife being in good faith, ought to be sustained.

2. The pleading of appellees cannot be construed as charging fraud against the wife. (Thompson v. Heffner, 11 Bush, 353; Parsons on

Sanders, &c., v. Miller, &c.

Contracts, vol. 1,431; 3 Cowen's Reports, 537; Johnson's Ch'y, 537; 11 Leigh, 136; 5 Allen, 348; 7 Peters, 389; Civil Code subsec. .4, sec. 113; Gen. Stat., chap. 44, art. 1, sec. 1; Beadles v. Miller, 9 Bush,. 405; Maraman v. Maraman, 4 Met., 76; Bump on Fraudulent Conveyances 290; *Ib.*, 296; 17 Vesey, 264; Roper on Property, 303; 13 B. Mon., 496; 37 Iowa, 517; 5 B. Mon., 274; 4 Met., 59; 65 Maine,. 279; 63 *Ib.*, 328; 115 Mass., 507.)

CALDWELL & HARWOOD FOR APPELLEES.

1. If such a contract as is alleged was made, it was a fraud upon creditors, and should be sustained.

2. The settlement is wholly disproportionate to husband's means, and is void for fraud.

3. It is clear that to the extent the husband used his wife's property and its proceeds in the settlement, it was fraudulent. It was personalty, and became his by the marriage. (Kerr on Fraud and Mistake, 202; Simpson v. Graves, Riley's Ch'y, 232.)

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

This case involves the validity of a settlement made in pursuance of a written antenuptial contract executed by the appellants on the 8th of February, 1878, in this language:

"An article of agreement entered into between J. B. Sanders of the first part, and Orra A. Davis of the second part. The said James B. Sanders agrees to give Orra A. Davis (provided she marries him) as good a house, to have and to hold forever, as her sister, Helen M. Stout had, or a. sum of money equivalent to the same, *five thousand dollars.*"

Not long after this writing was made they intermarried..

At that time he owned a farm, and one horse and buggy,. and was indebted in the sum of about $750 as principal, and near five thousand dollars as surety; and she owned 42 acres of land, worth $1,000, a horse, and had "$600, loaned out."

He sold his land on the 15th of July, 1878, for the sum of $8,556.55; but before doing so, he' obtained his wife's. relinquishment of her contingent right of dower by executing and delivering to her a paper reciting the substance and;

purpose of the antenuptial contract, and agreeing to pay to her five thousand dollars so soon as he should collect "the money" for which he sold his farm.

This paper would be of little weight in the absence of the antenuptial contract, because of the ease and security with which it might have been fabricated; but in view of all the facts of this case it is freed from suspicion, and based upon a valuable consideration.

She was not bound or compellable to relinquish her dower right, and would doubtless have refused to do so had her husband declined to give her a written assurance of his good faith and purpose to execute the marriage settlement which he had agreed to make upon her as a part of the marriage contract, but had not done.

Her relinquishment was a valuable consideration (Hall v. Plummer, 6 Indiana, 121), and that fact should be given its full weight in view of the antenuptial agreement.

While contracts made between husband and wife, as a general rule. are void, still if a husband voluntarily enter into a contract to make, or he does make, a settlement upon his wife in discharge of an obligation arising out of the reception of her property under an agreement made before its receipt or reduction to possession, such as the chancellor would, on her application, make upon her, neither the contract nor the settlement would be regarded as fraudulent against creditors.   And with much greater reason it can be said that such a contract is possessed of vital force when preceded by a *bona fide* antenuptial contract and supported by a valuable consideration (relinquishment of dower), moving from her to him at the instant of its execution.   (Latimer v. Glenn, 2 Bush; Campbell v. Campbell's trustee, MS. Op., 1881; Miller v. Edwards, 7

Bush, 397; Lyne, &c., v. Bank of Kentucky, 5 J. J. Mar., 550.)

But passing from the meritorious character of the second writing, and adverting to the antenuptial contract, we find upon both law and fact ample authority in its support.

The case of Magniac and others v. Thompson, 7 Peters, 393, cited by appellants' counsel, contains the doctrine of the text-books and decided cases in this country and England upon the issue involved in this case. We cite the following extract from it with hearty approval, as stating with perspicuity the rule and its reasons:

"Nothing can be clearer, both upon principle and authority, than the doctrine that to make an antenuptial settlement void 'as a fraud upon creditors, it is necessary that both parties should concur in, or have cognizance of, the intended fraud.

" If the settler alone intended a fraud, and the other party have no notice of it, but is innocent of it, she is not and cannot be affected by it.

. "Marriage in contemplation of law is not only a valuable consideration to support such a settlement, but is a consideration of the highest value; and, from motives of the soundest policy, is upheld with a steady resolution. The husband and wife, parties to such a contract, are therefore deemed, in the highest sense, purchasers for a valuable consideration."

As that case grew out of a marriage settlement actually made before marriage, and in the case before us the settlement was not consummated until *after* marriage, it is not in that particular a complete authority here. But in the case of Browning's administrators v. Coppage, 3 Bibb, this court held that a contract between husband and wife, made before

marriage, but not to be operative until after coverture ceased, was not extinguished by the intermarriage, under the rule that, in general, the contracts made between husband and wife when single became void by their marriage.

And this exception to the general rule is based upon the valuable consideration furnished by her to uphold the contract. And in that case the consideration was her agreement that he should enjoy all of her estate during his life, although she might die without issue. On this point see 2 Bibb, 408.

And in a more recent case, Kinnaird, &c., v. Daniel, &c., 13 B. Mon., 500, valuable and meritorious considerations moving from the wife were given their full force in support of settlements made after marriage in pursuance of an antenuptial agreement.

Roper on Property, volume 1, page 303, cited in the case above, says that—

"Settlements made after, but in pursuance of, written articles entered into or letters written before the marriage," are "unimpeachable by any persons, whether they be creditors or subsequent purchasers, for the contract of marriage is a valuable consideration, and establishes the settlement against every one."

Having mentioned the law upon antenuptial contracts to make settlements executed both before and after the marriage, for the purpose of giving each of the writings executed by Sanders to his wife its due force, and to point with certainty to the issue of fact in this case, we find that an action was brought by each of the appellees, after procuring a return of no property, upon executions which emanated from judgments at law rendered in their behalf against the appellant husband for debts that he had created as surety,

in which they substantially allege that he had fraudulently caused a deed to be made to his wife to a tract of land he had purchased subsequent to the sale of the land owned by him at the time of the marriage, for the purpose of cheating and delaying his creditors, and that she participated in his fraudulent intent.

The answer of the appellants denies the material allegations of fraud, and they rely on a settlement upon the wife made in execution of the antenuptial contract.

Was the settlement fraudulent in fact?

It appears that out of the sum for which he sold his land he paid to her, in part performance of the marriage contract, $3,955 and disposed of the residue of the $8,556.55 by paying $3,000 of it to his creditors, and retaining or consuming the balance in support of himself and wife.

On the 31st of December, 1878, he, as her agent, bought the land sought to be subjected by appellees to their debts, and had it deeded to her. The price agreed to be paid for the land was $4,459.90, all of which she paid with the money obtained from him, and a portion of her property that she owned when they married.

Her deed was duly acknowledged and recorded, and before appellees instituted this action to set aside the conveyance, she had expended the remainder of her property and money, and a part of $1,500 she had borrowed in erecting houses and other improvements upon what she had the right to suppose was her own land.

At the time the marriage agreement and deed to her were executed, the evidence tends strongly to prove that she knew nothing of the amount or character of his indebtedness, except the information given to her by him, to the effect that he owed a small amount for his sons and sons--

in-law, which he did not expect to have to pay, and about $750 for debts created by himself.

The evidence, if to be believed, and it is not impeached. or attempted to be discredited in any way except by their condition and the character of the transaction, and we see nothing in the first to justify such a violent inference, and the last is upheld by sound policy and a highly meritorious, and very valuable consideration, shows that she stands as. fair as any other purchaser for value. And it never has. been held that the mere fact that an assignment, sale of property, or payment of money in discharge of an obligation to a *bona fide* purchaser or creditor, operates as a pref- erence of one creditor over another, is sufficient at common law to invalidate it, unless it be for a consideration so inade- quate as to prove the perpetration of an actual fraud upon creditors, which is participated in by both or all the parties to the transaction.

It is true if one were guilty of fraud, in so far as it could be reached without injury to another who was innocent, it would be the duty of the court to render relief; but as we have seen, in a case like this, the wife must also participate in or have knowledge of its perpetration.

She maintains her innocence by her sworn evidence, and having invested nearly all she possessed in the land for which she relinquished her dower in a much more valuable tract, and performed with fidelity the antenuptial contract, we are unwilling to disturb her in the enjoyment of a home prepared by her industry, and lawfully anticipated by her marriage agreement.

Wherefore, the judgment is reversed, and cause re-manded for judgment in conformity to this opinion.