### COMSTOCK *v.* COMSTOCK.

### Opinion delivered November 29, 1920.

1. DOWER—SETTLEMENT IN NATURE OF JOINTURE.—An antenuptial agreement between husband and wife that the wife shall take a child's part in her husband's estate, except as to the homestead, being intended in lieu of dower, though not a technical jointure, will be deemed an equitable jointure.

2. HUSBAND AND WIFE—ANTENUPTIAL AGREEMENT—CONSIDERATION.— Marriage is a sufficient consideration for an antenuptial agreement.

3. HUSBAND AND WIFE—ANTENUPTIAL AGREEMENT—CONSTRUCTION.— Where antenuptial contracts are freely entered into, are not unjust or inequitable, and there is no fraud, they should be liberally construed to effectuate the intention of the parties, and should be looked upon with favor and enforced accordingly.

4. HUSBAND AND WIFE—ANTENUPTIAL AGREEMENT—ACKNOWLEDGMENT.—Under Kirby's Dig., § 5167, an antenuptial contract is valid as between husband and wife, though not acknowledged.

5. WITNESSES—HUSBAND AND WIFE.—Kirby's Dig., § 3905, rendering a husband and wife incompetent to testify for or against each other, has reference to suits affecting third persons, and, since the enactment of the Married Women's Acts (1915, p. 684; 1919, p. 36), a husband or wife may sue the other, and either is a competent witness in suits between them.

6. HUSBAND AND WIFE—ANTENUPTIAL AGREEMENT.—Evidence *held* to show that an antenuptial property agreement was just and reasonable.

7. HUSBAND AND WIFE—MARRIAGE SETTLEMENT.—A settlement upon the wife after marriage in lieu of an equitable jointure, if fair and equitable, will be upheld.

8. FRAUDS, STATUTE OF—SETTLEMENT IN LIEU OF JOINTURE.—Where a husband and wife by an antenuptial agreement fixed a jointure for the wife, a subsequent parol settlement whereby the wife accepted a lump sum and released her husband's estate was not an agreement for the sale of land within the statute of frauds.

9. HUSBAND AND WIFE—SETTLEMENT IN LIEU OF DOWER.—Where a wife who had entered into an antenuptial agreement fairly fixing her property rights accepted a sum in satisfaction thereof, and the payment was fair and reasonable, she is estopped thereafter from asserting rights against her husband's estate.

Appeal from Crawford Chancery Court; *J. V. Bourland*, Chancellor; reversed.

*E. L. Matlock*, for appellant.

1. The antenuptial contract was a jointure and reasonable, and bars dower. Kirby's Digest, §§ 2695-6; 62 Ark. 79; 140 N. W. 872; 21 Cyc. 1255; 79 Ky. 517; 98 N. E. 588; 108 *Id.* 691; 110 *Id.* 34; 130 N. W. 155; 87 Ark. 175.

2. Marriage was a sufficient consideration to support the antenuptial contract. Such contracts, when freely entered into and when not unjust or inequitable, are favored and enforced and liberally construed to give effect to the intent of the parties. 123 Pac. 742; 33 Kan. 449; 61 *Id.* 683; 116 Ind. 545.

3. At common law husband and wife could not contract with each other, but in equity they could, and are bound if the contract is fair and reasonable. 46 Ark. 542; 41 *Id.* 177; 42 *Id.* 503; 95 *Id.* 523; 75 *Id.* 127; 67 *Id.* 16; 101 *Id.* 522. All the equities of this case are with appellant, as he lived up to the provisions of the antenuptial contract, and it should be upheld.

*Sam R. Chew*, for appellee.

1. The contract sued on is a nullity and void on its face, as it does not comply with the law, and is indefi-

nite and uncertain. It was not acknowledged and recorded.

2. Appellant was not a competent witness. Even if a good and valid contract, *the action* here is premature and untimely, and the authorities cited for appellant are not in point.

WOOD, J. On the 20th day of August, 1914, the appellant and appellee entered into the following contract:

"Whereas, R. Comstock, of Uniontown, Arkansas, and Ella Babb, of the same town and State, have entered into an agreement to marry, and whereas, the said R. Comstock has an estate or property and children of his own, and the said Ella Babb has an estate or property of her own; therefore this agreement is made. The said R. Comstock agrees to bear all expenses of the entire family, except the clothing or wearing apparel for Mrs. Babb's children, which are to be borne by the Babb estate. The said Ella Babb in lieu of dower and widow's right agrees to take that part of the estate which each child shall inherit, counting herself as a child, except as to homestead, only what is known as a child's part as her dower of R. Comstock's estate, should he die first."

The appellant and appellee were married on September 11, 1914, and lived together until about May, 1919, when they separated. In the early part of January, 1918, the appellant paid to appellee the sum of $2,000, which appellant claims was paid by him to the appellee and accepted by her in settlement of the ante-nuptial contract. After the alleged settlement the appellee refused to join appellant in the conveyance of her dower interest in certain real estate of appellant, and after the separation appellant instituted this action against the appellee, the purpose of which was to confirm the ante-nuptial contract and the settlement made between the appellant and the appellee and to divest appellee of any possibility of dower in appellant's lands.

The appellee, in her answer, admitted that the appellant had paid her the sum of $2,000, but denied that

such payment was made in settlement of the ante-nuptial contract. She alleged that she and the appellant found that it would be impossible to live peaceably and quietly together, both having children by a former marriage, and that they agreed to separate, and that the $2,000 was paid to her to enable her to buy a home which she and her children could occupy separately and apart from the appellant and his children. She alleged that the so-called ante-nuptial contract was void because it was never acknowledged; that she did not refuse to join the appellant in the conveyance of his real estate, but claimed that she was entitled to the value of her expectant dower interest in the proceeds of such sales. She prayed that appellant's complaint be dismissed for want of equity. The ante-nuptial contract, *supra,* was introduced in evidence.

Over the objection of appellee, the appellant testified substantially as follows: That after their marriage, and while they were still living together, he paid to the appellee the sum of $2,000, which was a settlement under the ante-nuptial contract "to cover everything up to January, 1918." It was agreed that, if they continued to live together and accumulated more money, the appellee would get her share of it. The $2,000 was paid the appellee for her interest in whatever property appellant had up to January 1, 1918, and appellant then had in mind to give appellee a share in any property accumulated thereafter upon the basis of the contract. He did not know that they were going to separate. Before the settlement, appellee had purchased a home. They continued to live together until May or June, 1919, when she moved into her own home. After the payment to his wife of the $2,000 and up to the time of the separation, he had not accumulated any more property, but on the contrary, if there were any change, he had lost. In addition to the $2,000, he gave his wife before she left him $65, the proceeds of some old accounts that he did not consider of any value at the time he made the settlement. Appellant had six children by a former marriage. At

the time the ante-nuptial contract was executed and at the time of the marriage appellant estimated his estate to be worth between fourteen and sixteen thousand dollars, but at the time he paid the appellee the $2,000, appellant doubted if his estate was worth as much as fourteen thousand dollars. At the time appellant paid the appellee the $2,000 there was no agreement that appellee should have any further interest in appellant's property. He understood that she was claiming an interest in his home place in addition to her home, and he wanted to settle the whole matter because he might die first, and he told her when he paid her the money that she would have no further claim on his real estate, and she agreed to it, and made one or two deeds after that without demanding any money, but had recently refused to sign a lease unless appellant would give her one-half of the money, and thereupon appellant brought this suit. Appellee left appellant voluntarily, and there was no agreement between them that he would support her if she left him. He told her that he could not keep up two homes, and she replied: "I am going if I don't get a cent."

The appellee testified that she bought the Wood property where she then lived, paying $2,000 for it; that she knew that she was not going to stay with her husband and told him that she was going to buy the property, and he said that it might be a good idea, and that he would pay her what she was due if she would agree to move if he died before she did. She accepted the $2,000 on those terms. Appellant said that it would not affect the ante-nuptial contract. Appellee did not decline to join appellant in the execution of deeds except as it might affect her interest. At the time the appellant paid her the $2,000 he said that $2,000 was what her part would be, and that he would pay it to her then if she would give up the homestead rights. He said he was worth about $14,000. He told appellee at the time they were married that his estate was worth $20,000. Appellee moved to the house where she now lives about one year after the

appellant paid her the $2,000. Appellee joined her husband in the sale of some real estate after he paid her the $2,000. He told her that he had to sell the same to settle some debts. She did not get any of the money. Appellee had an estate of somewhere about $8,000 in real and personal property at the time she and appellant were married.

The court entered a decree declaring that the $2,000 paid by the appellant to the appellee was an advancement and constituted a lien upon her dower interest in appellant's property. The court also decreed that the ante-nuptial contract between the appellant and the appellee be canceled and that the appellant's complaint be dismissed for want of equity, and that the appellee have a judgment for all costs, etc. From that decree is this appeal.

In *Bryan* v. *Bryan,* 62 Ark. 79-84, we said: "Jointure is defined to be 'a competent livelihood of freehold for the wife of lands and tenements, to take effect in profit and possession presently after the death of the husband, for the life of the wife at least.' " 2 Blackstone, Com. 137. "One mode of barring the claim of a widow to dower," says Mr. Washburn, "is by settling upon her an allowance previous to marriage, to be accepted by her in lieu thereof." Though the ante-nuptial contract under review may not be technically a jointure, under the provisions of our statute, sections 2695-96-97, it was nevertheless intended by the parties as a provision, made by the appellant and accepted by the appellee, in lieu of dower. The court, therefore, was correct in treating the contract as erecting an equitable jointure. See 4 Kent's Com. 55; *Rieger* v. *Schaible,* 81 Neb. 33, 115 N. W. 560, 17 L. R. A. (N. S.) 866; 16 Ann. Cas. 700; *Stilley* v. *Vogler,* 14 Ohio 610; 1 Tiffany on Real Property, § 226, p. 789; Words and Phrases, "Jointure;" Scribner on Dower, p. 408, *et seq.*

Marriage was a sufficient consideration for the ante-nuptial contract. Where such contracts are freely entered into and are not unjust or inequitable, and there is

no fraud, they should be liberally construed to effectuate the intention of the parties and should be looked upon with favor and enforced accordingly. *Henry* v. *Butler,* 123 Pa. 742-744, and cases there cited; *In re Appleby's Estate,* 111 N. W. 305. See, also, *Nesmith* v. *Platt,* 114 N. W. 1053-1056; *Sanders* v. *Miller,* 79 Ky. 520; *In re Thormon's Estate,* 144 N. W. 5-6. The contract was valid between the appellant and the appellee, although it was not acknowledged. Section 5167, Kirby's Digest.

Section 3095, subdivision 4, Kirby's Digest, renders husband and wife incompetent to testify for or against each other. This statute was enacted with reference to the laws of the marital relation at the time of its passage. At that time the husband and wife could not contract with, nor sue each other. The statute had reference, of course, to suits that were brought by husband or wife against third parties, or *vice versa.* But, even if the above statute could be held to apply to suits between husband and wife, our married women's acts of 1915, p. 684, and of 1919, p. 36, has changed entirely the status of married women and has removed all their common-law and statutory disabilities. See *Fitzpatrick* v. *Owens,* 124 Ark. 167. These statutes would by necessary implication repeal the old statute and render husband and wife competent as witnesses for or against each other in suits between them.

Without going into detail, we are convinced, from the face of the contract and the evidence adduced, that, when the personal status of the parties, their ages, their respective families, and their separate properties are considered, the ante-nuptial agreement was a just and reasonable one.

The only remaining questions are, could the equitable jointure erected by this ante-nuptial agreement be settled by the parties after their marriage, and was there a fair settlement? Even before the passage of the last acts, *supra,* enfranchising married women, this court has

upheld and enforced, in equity, contracts that were made on fair and equitable terms between husband and wife. *Scogin* v. *Stacey,* 20 Ark. 265; *Gainus* v. *Cannon,* 42 Ark. 503; *Bowers* v. *Hutchinson,* 67 Ark. 15; *Hannaford* v *Dowdle,* 75 Ark. 127; *Donald* v. *Smith,* 95 Ark. 523.

The learned chancellor erred in holding that the agreement for a settlement of the ante-nuptial contract under the terms shown in the evidence was "an independent parol agreement for the sale of an interest in lands," and therefore within the statute of frauds. It was in no sense a sale of her dower interest, or the interest that was provided for her in lieu of dower by the jointure. It was simply an agreement upon her part to accept $2,000 in lieu of the provisions made for her by the ante-nuptial contract. The provision made for her by the ante-nuptial contract, except as to the homestead, was wholly contingent upon her surviving him and upon his having an estate, which a child could inherit. The appellant was in possession of the land. He paid appellee $2,000, and she accepted the same in settlement or fulfillment of the ante-nuptial contract. If there was no fraud and the contract was fair and reasonable, the chancery court should uphold and confirm it, not as a new and independent contract, but as relating to, and in fulfillment of, the ante-nuptial agreement. See 21 Cyc. 1255. No fraud is charged against the appellant. His estate at the time of the settlement of the ante-nuptial contract was worth not exceeding $14,000. He had six children. The settlement was made on the basis of the ante-nuptial contract that appellee was to have the value of a child's part in the estate which was estimated at $2,000. In view of the fact that her interest under the ante-nuptial agreement was wholly contingent and that she removed the contingency by anticipating and settling in advance her interest by accepting the $2,000 in fulfillment of the jointure provision, we regard the settlement as in all respects fair and just to her and one that she should not be allowed to repudiate. By such settlement she has been

enabled to enjoy in advance the benefits of an ante-nuptial contract, which she could not have enjoyed unless she lived longer than the appellant. There is no testimony in the record to warrant the conclusion of the trial court that the appellant intended the $2,000 as an advancement to the appellee, or that the appellee received the same as such. On the contrary, the testimony shows that appellant paid to the appellee and the appellee accepted the sum of $2,000 as "her share" of the appellant's estate. Under these circumstances, the appellee should be estopped from claiming that the agreement by which this settlement was consummated is invalid. *In re Adams Estate,* 140 N. W. 872.

The court erred in its findings and judgment. The decree is therefore reversed, and the cause is remanded with directions to enter a decree divesting the appellee of any and all interest in the estate of the appellant, and for such other and further proceedings as may be necessary according to law and not inconsistent with this opinion.