HANNON, RESPONDENT, v. HANNON, ADMINISTRATOR, ET AL.,
APPELLANTS.

(No. 3,174.)

(Submitted September 20, 1912.   Decided October 23, 1912.)

[127 Pac. 466.]

*Husband and Wife—Dower—Release—Antenuptial Contracts—
Validity.*

1.  *Held,* that the methods enumerated in sections 3708, 3714, 3716
and 3719, Revised Codes, in which a widow's right to dower may be
relinquished, are not exclusive, but that an antenuptial contract releas-
ing her dower interest in her intended husband's property is binding
upon her as widow, provided it is free from fraud or misrepresentation,
reasonable in its provisions, and entered into by both parties in good
faith.

*Appeal from  District Court, Ravalli County.*

ACTION by Margaret Hannon against Thomas B. Hannon, ad-
ministrator of the estate of George W. Hannon, deceased, and
others.   From a judgment sustaining a demurrer to defendants'
answer, they appeal.   Reversed and remanded, with directions
to overrule the demurrer.

*Mr. J. E. Shoudy* submitted a brief and argued the cause
orally, in favor of Appellants.

The question in controversy in this case is, Does section 3719
of the Revised Codes provide the only way in law or equity by
which a widow may be barred of her dower?   This statute has
been interpreted pretty generally as set forth in 14 Cyclopedia
of Law and Procedure, 940: "The provisions of a statute that a
jointure is a bar to dower do not ordinarily deprive an in-
tended wife of the power to bar her dower by any other form of
antenuptial contract"; citing *Barth* v. *Lines,* 118 Ill. 374, 59
Am. Rep. 374, 7 N. E. 679.   The cases are clear on this point
all over the country, and most of those which are contrary are
based on the fact that the contract was a post-nuptial and not
an antenuptial contract, or that the contract was shown upon
a trial to have been unfair or gained by fraud.   *Stilley* v. *Folger,*

14 Ohio, 610, sets forth the law clearly. (See, also, *McNutt* v. *McNutt*, 116 Ind. 545, 2 L. R. A. 372, 19 N. E. 115; *Johnston* v. *Spicer*, 107 N. Y. 185, 13 N. E. 753; *Andrews* v. *Andrews*, 8 Conn. 79; *Pierce* v. *Pierce*, 71 N. Y. 154, 27 Am. Rep. 22; *Naill* v. *Maurer*, 25 Md. 532; *Gelzer* v. *Gelzer*, Bail. Eq. (S. C.) 387, 23 Am. Dec. 130; *Rieger* v. *Schaible*, 81 Neb. 33, 16 Ann. Cas. 700, 17 L. R. A., n. s., 867, 115 N. W. 560.)

The respondent, however, contends that the law in Montana is contradictory to this authority, and cites the case of *Dahlman* v. *Dahlman*, 28 Mont. 377, 72 Pac. 748. That case, appellants contend, is not controlling. It sets forth merely the legal status of the wife in regard to distribution of an estate under the usual circumstances. In that case there was no contract waiving dower, no equitable jointure had been settled on the wife; nor was there any reason why the legal rule should not apply.

*Messrs. O'Hara, Edwards & Madeen,* for Respondent, submitted a brief; *Mr. T. J. Edwards* argued the cause orally.

The antenuptial contract in question here does not bar dower under our Codes. Dower can be barred only "by her [the wife's] deed executed and duly acknowledged in conformity with the law, or by acceptance by her of a devise or bequest under section 234 [Civil Code, 1895], or by jointure settled upon her, with her assent, by her husband, before the marriage, under the provisions of the Codes." (*Dahlman* v. *Dahlman*, 28 Mont. 374, 72 Pac. 748.)

Appellants do not claim that plaintiff's right of dower has been alienated in any of the matters above set forth, and with that admission the case should have ended and the widow been allotted her dower.

*McNutt* v. *McNutt*, 116 Ind. 545, 2 L. R. A. 372, 19 N. E. 115, and *Rieger* v. *Schaible*, 81 Neb. 33, 16 Ann. Cas. 700, 17 L. R. A., n. s., 867, 115 N. W. 560, are not in point. In both cases there was a mutual release of claim to the other's property, and each case specifically limits its decision to such facts.

It seems to be the general rule that the "equitable considerations" which support this character of contract, when they are

held not void, are the mutual covenants contained in these contracts by which the parties waive and relinquish the rights in each other's property. There are no mutual covenants to support the contract in this case. The covenant of waiver and relinquishment is on the part of respondent alone; no consideration was received by the widow during the lifetime of her husband, hence there can arise in this case no "equitable considerations" to support the barring of dower.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an action for allotment of dower. The plaintiff is the surviving widow, Thomas B. Hannon is the administrator, and the other defendants are heirs at law of George W. Hannon, deceased, who died intestate, seised in fee of certain real estate situated in Ravalli county, Montana. The complaint is in the usual form employed in such cases. The joint amended answer of the defendants sets forth that prior to the date of the marriage of plaintiff and George W. Hannon, the plaintiff was in poor financial circumstances; that she had not to exceed $200 and a contingent interest in certain other property; that plaintiff and George W.. Hannon entered into an antenuptial agreement in writing, by the terms of which plaintiff renounced any and all claim to dower in the property which Hannon then owned or which he might thereafter acquire. The contract recites that the parties to it are about to intermarry, one with the other, and then continues: "Now, therefore, in consideration of the foregoing premises, and to the end that all the estate, real and personal, of which said party is now or may hereafter become seised or possessed shall be free from any claim or demand of said second party, her heirs, executors or assigns, in the way of dower or otherwise, said second party hereby covenants and agrees in consideration of the foregoing and of the payment of the sum of one dollar to her by said first party, which payment is by these presents acknowledged to have been made prior to the signing hereof, and the further sums hereinafter mentioned to be paid

in the manner herein below stated said second party does hereby waive and forever renounce in behalf of herself, her heirs, executors, administrators and assigns, any claim or right of dower or other claim or rights in any and all estate of which said first party may die seised or possessed.'' The further consideration mentioned in the contract is the sum of $500, to be paid to the plaintiff, in the event that she should survive Hannon, out of the first funds coming into the hands of the administrator after paying funeral expenses and the expense. of last sickness. It is further alleged that this contract was entered into without fraud; that it is reasonable and fair; that it was made in contemplation of marriage and with marriage as a consideration therefor; that by reason of the existence of such contract Hannon was induced to, and did, marry the plaintiff; and that without such contract the marriage would not have taken place. It is further alleged that Hannon fully performed all the terms of the contract by him to be performed in his lifetime, that the administrator of his estate has tendered performance on his part, and is only prevented from fully performing by the refusal of the plaintiff to accept the benefit provided for her in the contract. To this amended answer a general demurrer was sustained and judgment entered in favor of plaintiff, from which this appeal is prosecuted. The single question is presented: May the dower interest be extinguished by a contract of the character of the one now before us?

Section 3708, Revised Codes, provides: ''A widow shall be endowed of the third part of all lands whereof her husband was seised of an estate of inheritance at any time during the marriage, unless the same shall have been relinquished in legal form.'' The section further declares that, if the wife joins her husband in a conveyance of land, she thereby relinquishes her inchoate right of dower except as to the overplus in case of a sale under mortgage foreclosure.

Section 3714 provides for an election by the widow as between a devise or bequest in her favor and her dower interest. If she elects to take the devise or bequest in lieu of dower, her selection bars her claim of dower.

Section 3716 provides for an election by the widow under certain circumstances as between her dower interest and the one-half of all the real estate which shall remain after the payment of the debts and claims against the estate of her deceased husband. If she elects to take the one-half of the real estate in lieu of her dower interest, such election bars her claim to dower.

Section 3719 provides: "A woman may be barred of her dower in all the land of her husband by a jointure settled on her with her assent before the marriage: Provided, such jointure consists of a freehold estate in lands for the life of the wife, at least, to take effect in possession or profits immediate on the death of the husband"; and section 3720 indicates how her assent shall be manifested.

It is conceded that plaintiff is entitled to assert her claim to **[1]** dower in the property of her deceased husband unless she has relinquished such right; and it is further conceded that she has not relinquished it in any manner described by the statutes referred to above. But it is insisted that the provisions of these statutes are not exclusive, and that if an antenuptial contract is entered into in good faith, is free from any taint of fraud, duress, or undue influence, is fair on its face and reasonable, a court of equity will give it effect. On the other hand, counsel for respondent contend that discussion of the question has been foreclosed in this state by the decision in *Dahlman* v. *Dahlman,* 28 Mont. 373, 72 Pac. 748. In prefacing the opinion in the *Dahlman Case,* Chief Justice Brantly said: "The only question submitted to this court for decision is whether, when the husband dies intestate, without children or grandchildren living surviving his widow and one or both parents, the widow is entitled to one-half of the estate under the statute relating to succession, in addition to her right of dower, or election in lieu thereof." The sections of the Code relating to dower and succession are then referred to, but only for the purpose of determining whether the rights conferred are alternative or cumulative, and everything said in the opinion is to be construed in the light of the single question for decision and the purpose had in considering

the statutes relating to the rights involved. The question, How may dower be waived or barred? was not involved, and was not determined. It is said in the opinion that the Chapter of the Code of 1895 in which are found sections 228 and 236, Civil Code (sections 3708 and 3716, Revised Codes), treats exclusively of the obligation, rights and duties of the husband and wife, including the dower right of the wife; and referring to the text of section 228, which defines dower, it is said: "This provision is without restriction or limitation. It attaches to all lands falling within the description, unless the wife shall have relinquished her right in legal form. This may be done only by her deed executed and duly acknowledged in conformity with the law, or by the acceptance by her of a devise or bequest * * * under section 234, or by a jointure settled upon her, with her assent, by her husband before the marriage, under the provisions of sections 239 and 240." Respondent now seizes upon the language of the last sentence just quoted, and insists that this court has solemnly adjudged that the only methods by which a widow's right to dower may be relinquished are (1) by deed; (2) by acceptance of a devise or bequest; or (3) by jointure. The question was not before the court at all, and consequently could not have been decided. The language referred to was employed only by way of illustrating the character of the right under our statutes. The methods enumerated are · methods specified by the statutes, by any one of which the dower right may be relinquished; but these several methods are mentioned in different sections of the Code, and, instead of prescribing the exclusive means, the different sections do not do more than define the effect of certain acts or instruments upon the dower right. There is not any apparent attempt in the statute to exclude other means as effective to bar the right; while the courts of other states having similar provisions have generally held that these provisions are not exclusive. (14 Cyc. 940.)

If the dower is admeasured to her, the widow may immediately dispose of her interest upon such terms as suits her. She may make any lawful contract respecting such right; or she may

accept a devise or bequest in lieu of her dower interest. A *feme sole* of full age and in possession of her faculties, may make any contract that any other person may make, and she is bound to the same extent as any other person would be bound. If, then, she may make any lawful contract respecting her dower interest after it is admeasured to her, or accept a bequest in lieu of dower in advance of its allotment, no valid reason can be suggested why she may not in advance agree to relinquish her claim upon a sufficient consideration. If the $500 mentioned in this contract should exceed the value of the dower interest, could these defendants dispute the widow's right to accept the provision which her husband had made for her? We think not. The contract is binding upon both parties or is not of any force or effect whatever.

The value of the property of which George W. Hannon died seised is not disclosed by this record, and therefore it cannot be said that the consideration for the widow's release is so far inadequate as to avoid the contract altogether. In our consideration of this case we are embarrassed by the meagerness of facts stated in the pleadings. But assuming, as we think we may rightly do, that this plaintiff was of full age at the time the antenuptial contract was entered into, that there was no issue of the marriage, and no one dependent upon this plaintiff for support, we think the amended answer sufficient to withstand a general demurrer, and further than this we need not go.

Upon a consideration of this case upon its merits the trial court will fully protect the widow's rights, if any are jeopardized, by applying the rule announced in 21 Cyc. 1249, as follows: "A woman may release her rights in her intended husband's property. Such a contract, however, to be enforced in equity, must be free from fraud or misrepresentation on the part of the husband, reasonable in its provisions, and entered into with the utmost good faith on the part of both; and an agreement releasing all claims against the estate of the intended husband, although valid when fairly made, will be most rigidly scrutinized,

and, if the circumstances show that she has been deceived, it will be set aside."

The question before us has received the serious consideration of the courts, and the decided weight of authority is in favor of the doctrine that the dower right may be barred by an antenuptial contract. It is fair to say that in most of the cases the contract considered called for mutual releases; but, when we remember the very favorable situation of a married woman under our Codes, that she may deal with her separate property as though she were single, and that this plaintiff might have disposed of her property at any time during coverture without the consent of her husband, it would seem that the difference between this agreement and those considered by the other courts is not sufficient to affect the rule. The following authorities support our conclusion: *Barth* v. *Lines,* 118 Ill. 374, 59 Am. Rep. 374, 7 N. E. 679; *Kroell* v. *Kroell,* 219 Ill. 105, 4 Ann. Cas. 801, 76 N. E. 63; *Johnston* v. *Spicer,* 107 N. Y. 185, 13 N. E. 753; *Andrews* v. *Andrews,* 8 Conn. 79; *Reiger* v. *Schaible,* 81 Neb. 33, 16 Ann. Cas. 700, 17 L. R. A., n. s., 866, 115 N. W. 560; *Naill* v. *Maurer,* 25 Md. 532. In the last two cases particularly the subject is treated so thoroughly that the arguments in favor of the position taken need not be restated.

In their brief counsel for respondent say, "The antenuptial contract contained no mutual covenants and was wholly executory, and respondent repudiated said contract by claiming dower." And it is insisted that in *Zachmann* v. *Zachmann,* 201 Ill. 380, 94 Am. St. Rep. 180, 66 N. E. 256, the Illinois court distinguishes between a contract of the character now before us and a contract containing mutual releases, and that the like distinction is made by the Nebraska court in the *Reiger Case* above; but not so. In *Zachmann* v. *Zachmann* the question presented was whether the wife by antenuptial agreement waived her right to a widow's allowance and her claim to a homestead out of her husband's property, and the court held that she did not, but only for the reason that the rights of a minor child, the issue of the marriage, were so far dependent upon the widow's rights

that it would be against the policy of the law to permit those rights to be infringed by the antenuptial agreement. It is true the Illinois court says: "The antenuptial contract remained executory, a bare agreement, and it was therefore within the power of the appellant to decline to be bound by the provisions of the contract as to her right to the widow's award." But, in view of the fact that the same court had frequently upheld antenuptial executory agreements as barring dower, the following in the opinion in that case is at least suggestive: "If the appellant had no interest in the property of the said Christian Zachmann, deceased, either real or personal, other than the right of dower, a different question as to the force and effect of the antenuptial agreement would be presented." It would be extremely rash to say that an executory contract is one which either party may repudiate with impunity. The Nebraska court refers to the case of *Zachmann* v. *Zachmann* only in connection with this statement: "With few exceptions, the decisions holding that the widow was not barred by the antenuptial contract are cases where children were born of the marriage, or the contract was executory, and the wife or widow was held to have the right to repudiate the agreement." The question of mutual releases goes only to the sufficiency of the consideration and the fairness of the contract, and, if the consideration actually received by the wife is adequate and the agreement is otherwise fair and reasonable, the mere fact that the husband does not relinquish his right to inherit the wife's property is of no consequence. Whatever may be said of such a contract when it is sought to bind a widow with minor children, the issue of the marriage, dependent upon her, there does not appear to be any valid reason why the widow who does not have anyone dependent upon her should not be bound by such agreement.

While under the rigid rules of the common law dower could not be barred by an antenuptial contract, it has been the constant practice of courts of equity in this country and in England to enforce such contracts. (2 Kent's Commentaries, 176; Story's Equity Jurisprudence, sec. 1370; Pomeroy's Equity Juris-

prudence, secs. 1297, 1403, and note.)    As said by the court in *Pierce* v. *Pierce*, 71 N. Y. 154, 27 Am. Rep. 22: "Antenuptial contracts, whereby the future wife releases her claim to her right of dower, and all other rights to the estate of her husband upon his decease, are fully recognized in law.    When fairly made and executed without fraud or imposition, they will be enforced by the courts."    And again, by the same court in *Johnston* v. *Spicer* above: "Antenuptial contracts, by which it is attempted to regulate and control the interest which each of the parties to the marriage shall have in the property of the other during coverture or after death, like dower, are favored by the courts, and will be enforced in equity according to the intention of the parties whenever the contingency provided by the contract arises."    Indeed, the enforcement of such contracts seems to be in harmony with the spirit of the law, as indicated in the following excerpts from reported cases: "Antenuptial contracts have long been regarded as within the policy of the law, both at Westminster and in the United States.    They are in favor of marriage and tend to promote domestic happiness, by removing one of the frequent causes of family disputes—contentions about property, and especially allowances to the wife.    Indeed, we think it may be considered as well settled at this day that almost any *bona fide* and reasonable agreement made before marriage to secure the wife in the enjoyment either of her own separate property, or a portion-of that of her husband, whether during the coverture or after his death, will be carried into execution in a court of chancery."    (*Stilley* v. *Folger*, 14 Ohio, 610.)

"Reason and authority are both in favor of a liberal construction of these contracts, for their purpose is to prevent strife, secure peace, adjust rights, and settle the question of marital rights in property.    From the earliest years of the law, the courts of chancery, respecting the iron rules of the common law, have favored contracts of this character, and this rule of equity has been grafted into the body of American jurisprudence." (*McNutt* v. *McNutt*, 116 Ind. 545, 2 L. R. A. 372, 19 N. E. 115.)

The judgment is reversed and the cause is remanded, with directions to overrule the demurrer to the amended answer.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SMITH, being absent, did not hear the argument, and takes no part in the foregoing decision.