Under the authorities, the right to the widow's allowance being granted as a matter of public policy, any waiver of the same must appear by clear and unambiguous language. (11 Cal. Jur., pp. 506-509; Woerner on American Law of Administration, p. 255.) "It makes no difference that the widow has sufficient property of her own out of which to support herself." (Estate ofLux, 100 Cal. 595, 35 P. 345, 639; Estate of Bump, 152 Cal. 274,92 P. 643.) "Right of family allowance paramount to right of testamentary disposition." (Sulzberger v. Sulzberger,50 Cal. 385; Estate of Davis, 69 Cal. 458, 10 P. 671; Estate ofLahiff, 86 Cal. 151, 24 P. 850; see, also, Estate ofWalkerly, 108 Cal. 627, 49 Am. St. Rep. 97, 41 P. 772; Estateof Huelsman, 127 Cal. 275, 59 P. 776; Church on Probate Law and Practice, 566 et seq.)
The antenuptial agreement does not expressly or impliedly waive the right to widow's allowance. Under the authorities the recitals in a contract are generally distinct from the promise or operative part, and in case of inconsistency between the two, the promise prevails. If the recitals are ambiguous and the operative part is clear, the operative part must prevail. If both the recitals and the operative part are clear but they are inconsistent with each other, the operative part is to be preferred. (Brantly on Contracts, *Page 562 
p. 286; Williams v. Barkley, 165 N.Y. 48, 57, 58 N.E. 756;Monks v. Provident Institution, 64 N.J.L. 86, 44 A. 968, and cited cases.)
It will be observed that there is no such expression in the recital, "Whereas, the party of the first part has agreed to make provision for the party of the second part in lieu of such dower, and in lieu of any claim that she, as the wife, or upon his death as his widow, or as one of his heirs at law or next of kin, would be seized or possessed or entitled to," as "any and all claims against the estate," or "statutory claims" or "allowances," or any of the general terms or sweeping clauses used in the agreements which have been construed by some of the courts as waiving an allowance. The expression is not "any other claim" but "any claim." The recital starts out with a provision concerning dower, and the reference which follows to "any claim" is a general one, and under the doctrines of ejusdem generis andnoscitur a sociis can have reference to dower only and not to some other or wider subject. This phrase in the language used by the courts will have to be known and judged by the company it keeps. It will in any event not be decreed to express an intention in clear and unambiguous language to waive some other distinct and definite right than those expressly stated. (6 Cal. Jur., p. 293; 2 Elliott on Contracts, secs. 1516, 1532.) Where general words follow others of more particular meaning, they are to be construed as limiting the things to the same sort as are designated by the principal word. (Brantly on Contracts, p. 292;Alabama v. Montague, 117 U.S. 611, 29 L.Ed. 1003, 6 Sup. Ct. Rep. 914 [see, also, Rose's U.S. Notes.])
Can it be contended that a release of dower in real estate and right to personal property can be stretched to cover the statutory allowance which is not an inherited right *Page 563 
to property but an expense of administration under all the authorities? We contend not.
Moneys paid out of an estate for family allowance do not pass by the inheritance laws of this state; they are charges against the estate created by special statutes in the interest of public policy. (In re Blackburn's Estate, 51 Mont. 234, 237,152 P. 31; Krumenacker v. Andis, 38 N.D. 500, 165 N.W. 524.)
We have made careful examination of the authorities and contend that the weight of authority will not sustain the position of the lower court in the instant case in holding that the relinquishment by Mrs. Oppenheimer of her rights of dower and thirds and all her interest in the real and personal property of her husband constitute a waiver of her right to an allowance. (See In re Whitney's Estate (1916), 171 Cal. 750, 154 P. 855;Miller v. Stepper, 32 Mich. 194; Pulling v. Wayne,85 Mich. 34, 48 N.W. 48; Bliss v. Montague, 149 Mich. 271,112 N.W. 911; Estate of Miller, 143 Iowa, 120, 121 N.W. 700;Mahaffy v. Mahaffy, 63 Iowa, 55, 18 N.W. 685; Hamilton v.Hamilton, 148 Iowa, 127, 126 N.W. 776; Estate of Johnson,154 Iowa, 118, 37 L.R.A. (n.s.) 875, 134 N.W. 553; Estate of Uker,154 Iowa, 428, 134 N.W. 1016; Veeder v. Veeder,195 Iowa, 587, 597, 192 N.W. 409; Estate of Miller, 143 Iowa, 120,121 N.W. 700.)
The widow's allowance is not a debt or demand but a deferred claim in the nature of costs of administration superior to claims of the fifth class, and application need not be made by the widow within the period of one year after letters of administration granted. (Hale v. Buford, 73 Colo. 197, 214 P. 543.)
We also cite: Lawrence v. Lawrence (Mo.App.),208 S.W. 496; Coulter v. Lyda, 102 Mo. App. 401, 76 S.W. 720; Lowe
v. Lowe, 163 Mo. App. 209, 146 S.W. 100. *Page 564 
Citing, on the point that the district court properly construed the antenuptial agreement: In re Cutting, 174 Cal. 104,161 P. 1137; In re Noah, 73 Cal. 583, 588, 2 Am. St. Rep. 829, 15 P. 287; Wickersham v. Comerford, 96 Cal. 433,31 P. 358; Estate of Yoell, 164 Cal. 540, 129 P. 999; Inre Lufkin's Estate, 131 Cal. 291, 63 P. 469, 470; Hannon v.Hannon, 46 Mont. 253, Ann. Cas. 1914B, 616, 127 P. 466;Deller v. Deller, 141 Wis. 255, 25 L.R.A. (n.s.) 751, 124 N.W. 278; Rieger v. Schaible, 81 Neb. 33, 17 L.R.A. (n.s.) 866, 115 N.W. 560; Paine v. Hollister, 139 Mass. 144,29 N.E. 541; Bright v. Chapman, 105 Me. 62, 72 A. 750; Zachman v.Zachman, 201 Ill. 380, 94 Am. St. Rep. 180, 66 N.E. 256;Kroell v. Kroell, 219 Ill. 105, 4 Ann. Cas. 801, 76 N.E. 63;Pavlicek v. Roessler, 222 Ill. 83, 78 N.E. 11; In re Appealof Staub, 66 Conn. 127, 33 A. 615; Appeal of Cowles,74 Conn. 24, 49 A. 195; Ludwig's Appeal, 101 Pa. 535; Tiernan
v. Binns, 92 Pa. 248; Langley v. MacHugh, 107 Ind. 198,6 N.E. 317, 8 N.E. 157; Hurley v. McIver, 119 Ind. 53,21 N.E. 325; Shafer v. Shafer, 129 Ind. 394, 28 N.E. 867; McNutt v.McNutt, 116 Ind. 545, 2 L.R.A. 372, 19 N.E. 115; Kennedy v.Kennedy, 150 Ind. 636, 50 N.E. 756; Buffington v.Buffington, 151 Ind. 200, 51 N.E. 328; Cauley v. Lawson, 58 N.C. (5 Jones Equity) 132; Young v. Hicks, 92 N.Y. 235;Peck v. Peck, 12 R.I. 485, 34 Am. Rep. 702; In re Appleby'sEstate, 100 Minn. 408, 117 Am. St. Rep. 709, 10 Ann. Cas. 563, 10 L.R.A. (n.s.) 590, 111 N.W. 305; O'Brien v. Lien,160 Minn. 276, 199 N.W. 914; Brown v. Brown's Admr., 25 Ky. Law Rep. 2264, 80 S.W. 470; In re Hoendler's Estate, 81 Pa. Super. 222; In re Holmberg's Estate, 108 Neb. 382, 187 N.W. 903;Getter v. Getter *Page 565 
(Kan.), 233 P. 1016; Hale v. Buford, 73 Colo. 197,214 P. 543; In re James' Estate, 38 S.D. 107, 160 N.W. 525.
This appeal involves the construction of an antenuptial agreement to determine whether or not the appellant, widow of Joseph E. Oppenheimer, deceased, by its terms waived the right to an allowance for her support, as authorized by sections 10144 to 10147, Revised Codes of 1921, during the progress of the administration of the estate of the deceased.
The facts out of which the controversy arose are, that Joseph E. Oppenheimer died on January 31, 1924, leaving a will which was duly admitted to probate in the district court of Silver Bow county, and the respondents A.J. Davis, Sr., Jacob Cohen and Sigmund Schilling are the executors thereof, while the other respondents are legatees under the will.
On December 1, 1924, the appellant, Cornelia E. Oppenheimer, presented her petition in the probate proceedings, reciting that she was the widow of the deceased; that on the thirteenth and thirty-first days of May, 1924, separate inventories and appraisements of the estate were duly returned and filed, showing that the property of the estate had been appraised at the sum of $793,963; that the debts of the estate did not exceed the sum of $400,000; that the estate was solvent; that an allowance therefrom was necessary for the support and maintenance of petitioner, and that $750 per month was a reasonable sum in that behalf; and praying that an allowance for that amount be made to her, beginning from the date of decedent's death, on January 31, 1924.
To the granting of this petition, the executors and legatees above named filed separate objections and claimed that by *Page 566 
virtue of an antenuptial agreement entered into on June 30, 1921, between the petitioner, who was then Cornelia E. Bingham, and the deceased, the petitioner waived the right to claim or receive such an allowance. The petition and objections thereto were regularly heard by the court on December 16, 1924, and taken under advisement. Thereafter, on March 10, 1925, the court made an order denying the petition and ordering the same dismissed. From this order the petitioner has appealed.
The antenuptial agreement, referred to in the answers of the respondents, had been presented by the petitioner as a claim against the estate, duly allowed and $5,000 paid thereon. This agreement, which for convenience of reference we have paragraphed and numbered, is as follows:
(1) "This indenture made the 30th day of June, 1921, between Joseph E. Oppenheimer, residing at Butte, Montana, party of the first part, and Cornelia E. Bingham, residing at No. 270 Convent avenue, in the borough of Manhattan City, county and state of New York, party of the second part, witnesseth:
(2) "Whereas, a marriage is intended to be had between the parties of the first and second part, and the party of the first part is seized and possessed of a large estate; and
(3) "Whereas, it is agreed between the parties hereto that the party of the second part is not to have any dower, thirds or right of dower in any real property of which the party of the first part is now or may hereafter become seized, possessed and entitled to; and
(4) "Whereas, the party of the first part has agreed to make provisions for the party of the second part in lieu of such dower, and in lieu of any claim that she, as the wife, or upon his death as his widow, or as one of his heirs at law or next of kin, would be seized or possessed or entitled to; and *Page 567 
(5) "Whereas, the party of the second part has agreed to accept the sums and payments hereinafter mentioned in full for all claims of dower, or right of dower or thirds that she, the said party of the second part, is entitled to as the wife, or will become entitled to as the widow, or heir at law or next of kin of the party of the first part:
(6) "Now, therefore, in consideration of the said intended marriage and of the sum of one ($1.00) dollar to me, the said party of the second part in hand paid, the receipt whereof is hereby acknowledged, I, Cornelia E. Bingham, the said party of the second part, hath granted, remised, released, conveyed and forever quitclaimed, and by these presents do grant, remise, release and forever quitclaim unto the said Joseph E. Oppenheimer, the party of the first part, and to his heirs and assigns forever, all the dower, thirds, right and title to dower, thirds, and of all other rights, title, interest, property, claim and demand whatsoever at law or in equity of me, the said Cornelia E. Bingham, the party of the second part, of, in and to all and every the lands, tenements and real estate whereof the said Joseph E. Oppenheimer is now seized or possessed, or whereof he may hereafter become seized or possessed or entitled to, so that I, the said Cornelia E. Bingham, my heirs, executors, administrators or assigns, nor any other person or persons for me, them, or either of them, shall have, claim or demand of, in or to the same or any part thereof; but thereof and therefrom shall be utterly barred and excluded forever.
(7) "And I do further sell, assign, transfer and set over unto the said Joseph E. Oppenheimer, his personal representatives and assigns, any claim that I, after becoming his wife or widow, may be entitled to in the personal property which he now owns or may hereafter become possessed or entitled to, and I do hereby agree that in consideration *Page 568 
of the payments as hereinafter provided, that I have and will hereafter make no further claim against him or against his estate, his heirs, executors, administrators or assigns, upon his demise for any share to which I, as his wife, widow, heir at law and next of kin may be entitled in the personal property of which he may be possessed.
(8) "And the party of the first part, in consideration of the above release, conveyance and assignment, agrees for himself, his heirs, executors, administrators and assigns to pay to the party of the second part, or in the event that the party of the second part shall predecease the party of the first part, then to her heirs, executors, administrators, personal representatives and assigns, the sum of one hundred fifty thousand ($150,000) dollars, as follows, to wit:
"Twenty-five thousand ($25,000) dollars on or before one year after the date of his death:
"Twenty-five thousand ($25,000) dollars on or before two years after the date of his death;
"Twenty-five thousand ($25,000) dollars on or before three years after the date of his death;
"Twenty-five thousand ($25,000) dollars on or before four years after the date of his death;
"Fifty thousand ($50,000) dollars on or before five years after the date of his death; and
(9) "It is further understood and agreed by the parties hereto that the said payments when made are to be in full satisfaction of all claims as hereinbefore stated, and shall be received by the party of the second part in full satisfaction of all claims for dower in the real estate and of any and all her interest in the personal property to which she would be entitled as the widow of the party of the first part, and that she will make, execute, acknowledge and deliver any deeds, releases or any other instruments in writing that may be required by the party of the first part or his *Page 569 
heirs, executors, personal representatives or assigns for the purpose of carrying out this agreement.
(10) "It is further understood and agreed that if by reason of the act of any Legislature or legislative body of any state or country, or for any reason this agreement and release shall be declared insufficient to release the interest it purports to release, convey or assign, then and in that event, the amount paid hereunder shall be deducted from any sum to which the said party of the second part would be entitled as dower or to which she would be entitled as widow, or next of kin or heir at law of the party of the first part."
It is conceded that the right to a widow's allowance may be waived and that, unless it is waived, the widow is entitled to it as a matter of right (In re Dougherty's Estate, 34 Mont. 336,86 P. 38); also that moneys paid out of an estate as an allowance are not considered as a part of an inheritance, but are charges against the estate constituting a part of the expenses of administration. (In re Blackburn's Estate, 51 Mont. 234,152 P. 31.)
The validity of the agreement under consideration is not[1] questioned by any of the parties, and in the construction of such an agreement no exception should be made to the general rule that the intention of the parties is controlling and must govern. (Deller v. Deller, 141 Wis. 255, 25 L.R.A. (n.s.) 751, 124 N.W. 278.)
In the case of Hannon v. Hannon, 46 Mont. 253, Ann. Cas. 1914B, 616, 127 P. 466, which involved the construction of an antenuptial agreement, this court quoted with approval the following language from McNutt v. McNutt, 116 Ind. 545, 2 L.R.A. 372, 19 N.E. 115: "Reason and authority are both in favor of a liberal construction of these contracts, for their purpose is to prevent strife, secure peace, adjust rights and settle the question of marital rights in property." *Page 570 
In speaking of the construction of a contract which was claimed to be somewhat ambiguous, this court in the recent case of Lee v. Lee Gold Min. Co., 71 Mont. 592, 230 P. 1091, said: "In the interpretation of this contract we must call to our aid certain elementary rules. The intention of the parties is to be pursued if possible. (Sec. 10520, Rev. Codes 1921.) This intention is to be gathered from the entire agreement, not from particular words or phrases or disjointed or particular parts of it. (Stockton Savings Loan Society v. Purvis, 112 Cal. 236, 53 Am. St. Rep. 210, 44 P. 561.) `The subject matter of the contract and the purposes of its execution are material to the ascertainment of the intention of the parties and the meaning of the terms used, and when they are ascertained they must prevail.' (5 R.C.L., sec. 226, p. 836.) It must be so interpreted as to give effect to the intention of the parties at the time of contracting. (Ferry Co. v. Forquer, 61 Mont. 336, 29 A.L.R. 642, 202 P. 193.) The contract must be viewed from beginning to end, and all its terms must pass in review; for one clause may modify, limit, or illuminate the other. (5 R.C.L., sec. 227, p. 838.)"
In order that the intended wife's relinquishment of her[2] interest in her husband's estate may include the statutory allowance for support, it is not necessary that such allowance shall be expressly named. (13 R.C.L., p. 1041, sec. 61.)
Counsel for respective parties, in elaborate briefs, have directed attention to a great number of cases construing antenuptial agreements, but after reading all of them we find they give but little aid in the construction of this particular agreement, for, as said by the supreme court of California: "Decisions on the interpretation of written instruments have but limited value when applied to the construction of documents embodying different language. To a great extent each writing must be viewed by itself, and the intent *Page 571 
of the parties must be ascertained from a study of the particular terms employed, read in the light of the underlying purpose of the transaction and the circumstances under which it was made." (In re Whitney's Estate, 171 Cal. 750, 154 P. 855.)
Approaching a consideration of the agreement entered into[3] between the appellant and the deceased, we find from its recitals that deceased was possessed of a large estate, and in contemplation of their approaching marriage they undertook to define the rights of appellant therein in the event that she should predecease him, and also the rights which she would have therein should she survive him as his widow.
It will be noted that in paragraph 6 of the agreement appellant released her dower rights in all of the real estate then owned or thereafter to be acquired by the deceased, and also "all other rights, title, interest, property, claim and demand whatsoever at law or in equity" in said real estate, to the end that neither she nor any of her representatives should claim any part thereof, but should be absolutely barred therefrom, and should not have any claim or demand in or to the same or any part thereof.
If the agreement had read that she "granted, remised, released, conveyed and forever quitclaimed * * * all the dower, thirds, right and title to dower" in and to "all and every the lands, tenements and real estate" then possessed or thereafter to be acquired by the deceased, it would have been a complete release of any possible dower right of the appellant in the real estate of the deceased. When the appellant further released "all other rights, title, interest, property, claim and demand whatsoever at law or in equity" to the real estate, she expressed an intent to waive something in addition to the mere dower right. *Page 572 
What other claim and demand could appellant have had in or to the real estate of the deceased in law or in equity? The right to receive an allowance for support during the administration of his estate, if she should survive him as his widow, is a claim or demand against the estate or property of the deceased which is granted by the provisions of sections 10144 to 10147, above. To give the last-quoted words of the agreement any meaning at all, it must be held that by the use of these words she intended to, and did, waive this right, so far as the real estate is concerned. If it should be conceded that the recitals contained in paragraph 4 of the agreement refer only to a release of appellant's interest in the real estate, it must be likewise conceded that it was intended as a release of more than a mere dower interest, for it refers not only to the dower interest but to "any claim that she as the wife, or upon his death as his widow * * * would be * * * entitled to." When the operative parts of an agreement are ambiguous, the recitals may be referred to as[4] a key to the intention of the parties (Barley v.Lloyd, 5 Russ. 344), and the recitals may be referred to for the purpose of ascertaining the situation of the parties. (Ming
v. Woolfolk, 3 Mont. 380.)
So it is clear that, if real property alone were involved, there could be no doubt but that it was the intent of the parties to this antenuptial agreement that the appellant should not have any interest, claim, or demand therein by way of dower, inheritance, or otherwise, and that her right to claim a widow's allowance is barred by its terms.
In paragraph 7 of the agreement, appellant further assigned[5] and transferred to deceased any claim that she might be entitled to after becoming his wife or widow in any personal property which he then owned or might thereafter acquire, and agreed that in consideration of the payments of the money to be made to her she would thereafter make *Page 573 
no further claim against him or against his estate for any share therein to which as his widow she might be entitled.
"A claim is the demand of something from some one on the ground of right" (Standard Dictionary), and "in its usual and proper sense is broad enough to include the statutory claim or right of the widow to an allowance from the estate of the testator, and, when a different intention is not manifested by the context, must be so considered." (In re Lufkin's Estate,131 Cal. 291, 63 P. 469.)
The widow's allowance is usually referred to as a preferred claim against the estate. In Hale v. Burford, 73 Colo. 197,214 P. 543, it is said: "The widow's allowance * * * is not a debt of, or an interest in, the estate, but a preferred claim, in the nature of costs of administration." And in In re James'Estate, 38 S.D. 107, 160 N.W. 525, the supreme court of South Dakota used this language: "The [widow's] allowance * * * is not in the nature of an interest in property, it is merely a preferred claim against the estate of a decedent which may or may not be available according to the circumstances."
When appellant presented her petition for a widow's allowance out of the estate of the deceased, she was certainly making a demand against it on the ground of a claimed right, and within the definitions above quoted this constituted a claim against the estate.
Suppose that the prayer of appellant's petition had been granted and that the allowance of $750 per month had been made to date from the death of the deceased on January 31, 1924. This would amount to the sum of $9,000 per year. Considering the fact that the total appraised value of the estate was nearly $800,000, and that it was indebted to the extent of about $400,000, it is not unreasonable to estimate that the estate could not be finally closed until the lapse of two or three years from the date of decedent's death. So that the widow's allowance, if granted according to her petition, would amount to from $18,000 to $27,000, *Page 574 
and since, as above pointed out, she had waived her right to this allowance, so far as the real estate was concerned, her demand for this large amount could only be satisfied by turning over to her a portion of the personal property or the proceeds derived from a sale thereof, and the value of the estate would be diminished to that extent. It seems to us that it would be a perversion of the plain language of the agreement to say that the appellant should be permitted to deplete the estate to the extent of $18,000 to $27,000, which could only be provided by a disposition of a portion of the personal property, after having expressly contracted that in consideration of the payment of $150,000 she would thereafter make no further claim against decedent or his estate for any share of his personal property which she would be entitled to as his widow.
Our conclusions in regard to the proper interpretation of paragraphs 6 and 7 of the agreement are fortified by a consideration of the wording of paragraph 9, wherein it is declared to be the understanding and agreement of the parties that the payments mentioned in paragraph 8 are to be in full satisfaction of (1) appellant's claim for dower in the real estate, (2) all interest in the personal property to which she would be entitled as the widow of the deceased, and (3) in full satisfaction of all claims thereinbefore stated. To give the last clause any significance at all, it must mean something besides the dower rights and the inheritable interest in the real and personal property of the deceased.
Reading this antenuptial agreement as a whole, taking into consideration the situation of the parties, the subject matter covered, and the language used, we are forced to the conclusion that it was the intent of the appellant and deceased in entering into it, that the payments to be made to appellant should cover all interest, claim and demand which she might have or assert at any time against him, his *Page 575 
estate, or property, including her claim for a widow's allowance pending the administration of his estate.
The order appealed from is affirmed.
Affirmed.
ASSOCIATE JUSTICES HOLLOWAY, GALEN and MATTHEWS concur.
MR. CHIEF JUSTICE CALLAWAY, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.
Rehearing denied July 6, 1925.