STATE ELEVATOR CO., APPELLANT, *v.* FARMERS' ELEVATOR CO., RESPONDENT.

(No. 7,152.)

(Submitted November 27, 1933. Decided December 20, 1933.)

[27 Pac. (2d) 743.]

*Messrs. Freeman, Thelen & Freeman,* for Appellant, submitted a brief; *Mr. Ernest Abel,* of Counsel, argued the cause orally.

*Messrs. Duncan & Duncan,* for Respondent, submitted a brief; *Mr. M. M. Duncan* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff, a corporation, brought this action against the defendant, a corporation, to recover certain losses arising out of the operation of a grain elevator at Twin Bridges, Montana. The defendant was the owner of the elevator in question.

The parties entered into a written contract for the operation of the elevator from September 5, 1928, until August 1, 1929. At about the latter date mentioned, they, by oral agreement, agreed that the written contract should be renewed for the term of one year from August 1, 1929. It appears no difficulty arose between the parties over the operation of the

elevator until during the renewal period of the written contract. The elevator was destroyed by fire on May 20, 1930.

The material provisions of the written contract are as follows: "It is therefore agreed, by and between the parties hereto as follows: The party of the first part [defendant] does hereby lease and let to the party of the second part [plaintiff] the hereinbefore described property for the period of time extending from the date of this lease until August 1, 1929, the same to be operated by State Elevator Company. The said State Elevator Company to have the custody and control of said elevator and other property and take care of same, use care to protect it from unusual destruction or damage, and to operate said property and business.

"Nothing herein contained shall be construed so as to require the party of the second part to keep said elevator open for business all of the time, but said elevator may be closed and business discontinued whenever in the opinion of the second party transaction of business is proving unprofitable.

"All running expenses, heat, power, insurance on stocks, license costs, etc., shall be borne jointly by the above mentioned parties, to be paid by the party of the second part, who shall keep a record of same and one-half of such expenses shall be charged to each party at the end of the fiscal year. It is further understood that the expense for labor shall not be more than $125.00 per month, all salaries in excess of this amount, except sacking cost and coal unloading to be charged to the party of the first part. Party of the first part to pay all taxes and insurance on building.

"It is further understood and agreed that in addition to the purchase of grain, the party of the second part may at its discretion handle for the elevator plants, such as flour, feed, coal, and other commodities. A full record of business carried on shall be kept by the party of the second part and on the first day of August, 1929, shall render a report of same, at which time the net profit accrued shall be divided between the above parties."

Plaintiff made a report of the business to the defendant on July 31, 1930, for the year commencing August 1, 1929, showing that the elevator had been operated at a loss of $2,091.89 and sought by this action to recover from the defendant one-half of that sum, or $1,045.94.

It appears from the evidence in the case that at the time of the fire there were sufficient stock and other commodities on hand in the elevator from the sale of which, if sold at market prices, no loss would have resulted from the operations during that year. The grain and other commodities were partially destroyed, and the residue was greatly damaged by the fire. Plaintiff made settlement with the insurance companies with which it carried fire insurance on the property for a sum less than its market value. The defendant did not participate in this settlement. Apparently the reason for making the settlement at a figure less than the market value of the property was due to the fact that plaintiff did not have a sufficient amount of insurance fully to protect it against loss and destruction by fire.

The cause was tried before the court sitting without a jury. Findings of fact were made of the issues against plaintiff. Judgment was entered in accordance with the findings, dismissing the action and awarding defendant its costs. The appeal is from the judgment.

The only question for solution on this appeal is whether the plaintiff under the written contract is entitled to hold the defendant responsible for one-half of the losses arising in the operation of the elevator business. The solution of this question involves the construction of the written contract.

A contract must be so interpreted as to give effect to the intention of the parties at the time of contracting. (*Lee v. Lee Gold Min. Co.*, 71 Mont. 592, 230 Pac. 1091; *Ferry & Co. v. Forquer*, 61 Mont. 336, 202 Pac. 193, 29 A. L. R. 642.) This intention is to be gathered from the entire agreement, not from particular words or phrases or disjointed or particular parts of it. (*In re Oppenheimer's Estate*, 73 Mont. 560, 238 Pac. 599.)

This contract contains no express covenant on the part of the defendant to pay one-half of the losses. It provides for the division of the net profits equally between the parties; that plaintiff in the operation of the elevator should keep a record of the operating expenses; prescribes the method in which certain items shall be charged to the parties, and states that all running expenses "shall be borne jointly" by them. An annual report was to be made at the close of the year's business "at which time the net profits accrued shall be divided between the parties."

Plaintiff contends that by the provisions of the contract wherein it is stated that the expenses are to be borne jointly, and that certain items are to be charged to each party, the defendant agreed to stand its share of the losses. Under the terms of the contract, however, plaintiff was not required to operate the elevator at all times and had the right to close the same and discontinue the business whenever in its opinion the operation of the elevator was unprofitable. Construing all these provisions together, it clearly appears that the parties to the contract intended that the business should not be operated at a loss, and provided for its discontinuance whenever losses were likely to arise; they not having been within the contemplation of the parties at the time the contract was made, we cannot construe it so as to render the defendant liable therefor.

The provisions relating to each of the parties bearing a portion of the operating expenses and the charging of certain of these items to them, were incorporated in the contract for the purpose of the compilation of the annual report and to provide a method for computing the net profits of the business.

The above construction of the contract conforms with the intention of the parties and gives effect to all of its provisions in accordance with the foregoing rules. The result reached by the trial court was correct.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.