No. 12426

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

IN THE MATTER OF THE ESTATE OF
PETER B. GLEIN, Deceased.

Appeal from: District Court of the Fifteenth Judicial District,
Honorable M. James Sorte, Judge presiding.

Counsel of Record:

For Appellant:

Anderson, Symmes, Forbes, Peete and Brown, Billings,
Montana
Rockwood Brown, Jr. argued, Billings, Montana

For Respondent:

Loren J. O'Toole argued, Plentywood, Montana

Submitted: June 19, 1973

Decided: JUL 2 6 1973

Filed: JUL 2 6 1973

Thomas J. Kearney
_____ Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal was brought on behalf of Glenna B. Glein, an incompetent, by and through her guardian, Martha Klaus, from an order of the district court of Sheridan County denying a petition for renunciation of will, and denying a petition for a widow's or family allowance in connection with the probate of the estate of Peter B. Glein, deceased.

Peter B. Glein, a resident of Sheridan County, Montana, died on March 7, 1969. He was survived by his wife Glenna B. Glein, then aged 83, and a natural son from a previous marriage, Gerald Glein. Mrs. Glein has two daughters from a previous marriage, Mrs. Martha Klaus and Mrs. Harriet Jordan. Decedent Glein's will, under which Gerald Glein was appointed executor, was admitted to probate on April 8, 1969. Within three years preceding Peter Glein's death, Mrs. Glein was deeded the family home and Gerald Glein was deeded four lots in Ward County, North Dakota. The Glein's joint checking account at the time of Peter Glein's death was $4,877.57. The appraised value of the estate, including the family home, North Dakota lots, and checking account balance was $56,983.24. The principal asset of the estate was a 980 acre farm in Sheridan County, Montana.

Under the will all personal property was left to Mrs. Glein and all real property was left to Gerald Glein as remainderman.

Gerald Glein, as executor has managed the farm since the death of his father without compensation. The actual farm operation is performed by one Howard Clark under a lease agreement. Clark had operated the farm under a lease for Peter Glein for several years prior to his death. A financial statement of income and expense was furnished to the district court and to Mrs. Glein's guardian. The records indicate that all income less actual probate costs and expense has been paid to Mrs. Glein as

- 2 -

follows:  Farm income  1969------------------$4,603.25
                     1970------------------$2,836.55
                     1971------------------$2,827.21
                     1972------------------$6,423.15.

In addition, Mrs. Glein receives a monthly income of $154.84 from social security and $75 from rental of her home.

In May 1969 Glenna Glein went to Denver, Colorado, the home of her daughter Martha Klaus and John Klaus, husband of Martha.  Under proceedings in the Colorado court, Mrs. Glein was adjudged incompetent and Mrs. Klaus was appointed guardian on May 24, 1969.  Mrs. Glein is being cared for in a nursing home in Denver.

In December 1971 Mrs. Klaus, as guardian of Mrs. Glein, filed a petition for renunciation of Peter Glein's will together with a petition requesting an allowance of $900 per month to be paid to the widow and to be applied retroactively in the amount of $650 per month.

By order dated November 14, 1972, the district court denied both petitions.  Appellant appeals from that order and judgment and from a denial of her request for rehearing.

During oral argument before this Court, appellant withdrew her assignment of error concerning the denial of her petition for renunciation of Peter Glein's will.  The remaining issue before this Court is whether the district court erred in denying the petition for a widow's allowance.

Montana statutes provide for two separate types of family allowance.  Section 91-2401, R.C.M. 1947, establishes what could be termed a preliminary or temporary allowance which is applicable "until letters are granted and the estate inventory is returned."  The record indicates that inventory and appraisal in the Peter Glein estate was filed on April 16, 1971.

Section 91-2403, R.C.M. 1947, establishes what could be termed an interim or semi-permanent allowance and is applicable

"during the progress of the settlement of the estate." See: 3 Bancroft's Probate Practice 2d Ed. § 730. The record indicates that on November 14, 1972, the date of the district court's denial of the petitions, the Glein estate had been in probate for over two and one-half years and, though not concluded, was ready for closing.

Provisions of Montana's family allowance statutes have been construed liberally in favor of surviving widows, particularly if it appears she lacks the means essential for her support. In re Hall's Estate, 124 Mont. 355, 224 P.2d 183.

The nature of the claim created under Montana's family allowance statutes was explained in In re Oppenheimer's Estate, 73 Mont. 560, 573, 283 P. 599.

> "The widow's allowance is usually referred to as a preferred claim against the estate. In Hale v. Burford, 73 Colo. 197, 214 Pac. 543, it is said: 'The widow's allowance * * * is not a debt of, or an interest in, the estate, but a preferred claim, in the nature of costs of administration.' And in In re James' Estate, 38 S.D. 107, 160 N.W. 525, the supreme court of South Dakota used this language: 'The [widow's] allowance * * * is not in the nature of an interest in property, it is merely a preferred claim against the estate of a decedent which may or may not be available according to the circumstances.'"

Determination concerning the granting and the amount of family allowance is made by the probate court in the exercise of its sound discretion on a case by case basis upon a consideration of all competent and relevant evidence before it. That court's determination will not be overturned unless there is a showing of manifest abuse of that discretion.

The facts proper for the probate court's consideration in the instant case were: (1) the widow's particular living and maintenance needs during the period of probate, (2) the assets she has received outright from the estate and those presently available to her, (3) the amount of income she receives from the

estate, (4) the amount of the widow's separate estate and income from other sources (Anno. 90 ALR2d 687), (5) the length of time the estate has continued in probate before the petition for allowance was brought (In re Trepp's Estate, 71 Mont. 154, 227 P. 1005), and (6) the effect that a particular amount of allowance will have upon other devises and bequests made under the will (In re Dougherty's Estate, 34 Mont. 336, 86 P. 38).

The probate court found the widow had not been a public charge, had assets to pay for her care, and was being provided with sufficient income for her care. Further, there was no showing that any family allowance was needed and the estate was in condition to be closed as of November 14, 1972, the date of the probate court's judgment and decree.

We find nothing in the record that would indicate an abuse of discretion by the probate court.

The judgment is affirmed.

_____
                                    Justice

We concur:

_____
Chief Justice

_____

_____
Justices